**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Harrison P. CRONIC,**
**Defendant–Appellant.**

**No. 80–1955.**

United States Court of Appeals,
Tenth Circuit.

Feb. 22, 1988.

Steven B. Duke, New Haven, Conn. (Harrison P. Cronic, Gainesville, Ga., and David W. Duncan of Duncan and Chew, Durango, Colo., on the briefs), for defendant-appellant.

John E. Green, First Asst. U.S. Atty. (David L. Russell and William S. Price, U.S. Attys., with him on the briefs), Oklahoma City, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SETH and SEYMOUR, Circuit Judges.

SETH, Circuit Judge.

This appeal comes to us after we remanded the case to the trial court. This was after the Supreme Court, at 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657, reversed the decision of this court reported at 675 F.2d 1126, and remanded the case. It was decided by the Court with the reversal in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The case went to the Supreme Court only on the adequacy of representation issue. We have examined the record of the hearing on our remand of this case to the trial court.

 The trial court, after our remand but before the remand hearing, demonstrated a degree of hostility toward the defendant which prevented an impartial conclusion based on the remand hearing.

The trial court after our remand made several statements on the record before the basic remand hearing which evidenced its hostility toward the defendant. For example, at a hearing relating to the reinstatement of defendant's bond held by the trial court, as directed by this court, the trial judge said in response to defendant's "Thank you":

> "Well, you're not welcome. I think you're a swindler and a cheat and you wouldn't see the light of day if I had any choice."

Other statements which show this attitude of the trial judge appear in the record. It is difficult to see how an appearance of impartiality was maintained in these circumstances.

The time element herein considered may be an aspect of the trial judge's hostility or may be a separate element. In any event, this court had remanded the case about two months before the date fixed by the trial court for the hearing on remand. The trial court appointed the then new Federal Public Defender to represent defendant at the remand hearing and gave him nine days to prepare. The attorney moved for additional time, the Government did not object, but the motion was denied. This was similar to the time given defendant's attorney to prepare for the initial trial. The court gave the attorney eleven days but when the attorney protested the court gave him 25 days. The attorney for a co-defendant, who pled guilty, stated that the Government's "documentation" was "a foot and a half if not two feet high." The Government had the case for about five years and two accountants had worked on it.

The hearing record on remand demonstrates that there was an obvious need to have an examination of the bank records on two basic issues, the exact amount of the overdrafts shown in the bank records, and the handling by the bank of a note and security put up by defendant near the outset of the dispute to secure payment of overdrafts if they existed or to constitute actual payment thereof. This payment or security was a note with a mortgage on a bottling plant. The bank took over the operation of the plant before payments on the note became due, and operated it for about two years. The mortgage was eventually foreclosed.

The intent of the defendant and his good faith as to the overdrafts was a basic issue in the prosecution, but at trial it was completely ignored by defendant's counsel to the prejudice of defendant. The testimony of the Government witnesses described a meeting between at least one bank official and the defendant at a time when it was not known whether the balances between the Florida bank and the Norman bank demonstrated an overdraft in the account of Skyproof (defendant's corporation) in the Norman bank. The defendant had come voluntarily from Florida to Dallas to have the meeting with the bank official who was there on a trip to discuss the possible overdrafts. At this meeting the defendant stated that any overdrafts would be covered and that there were funds and adequate property to be so applied. The record shows that defendant later delivered a note and mortgage to the bank to cover overdrafts which had then been established only in approximate figures and which were substantial. Funds were also transferred to the Norman bank. A note and a mortgage on a bottling plant in Paris, Texas were so delivered to the bank to cover the overdrafts as the defendant had offered to do. From the record it appears that this was accepted for the overdrafts. In any event, as mentioned, the bank shortly thereafter, and before payments on the note became due, took possession of the plant and began operating it. It operated the plant for about two years apparently with no accounting to anyone.

The trial court at the outset of the trial had explained to the jury pool that the nature of the case is a "check kiting scheme" which was the depositing of a check, "a fraudulent check ... when really there is no money there...." The case was tried throughout by the court and attorneys for both sides on the erroneous assumption that a check written on an account where there are insufficient funds to cover it is in itself a fraud under the federal mail fraud statute.

We have long held that good faith is a complete defense to a mail fraud charge as have other circuits. *United States v. Washita Construction Co.*, 789 F.2d 809 (10th

Cir.); *United States v. Westbo*, 576 F.2d 285 (10th Cir.); *United States v. Beitscher*, 467 F.2d 269 (10th Cir.). In *Westbo*, we stated:

"Thus, a defendant is entitled to an instruction covering good faith in mail and wire fraud cases where the evidence supports it. *Sparrow v. United States*, 402 F.2d 826, 828 (10th Cir.1968)."

576 F.2d at 288–89. The Supreme Court in a case charging the making of a false statement or report to a bank (18 U.S.C. § 1014) of course considered the particular statute in the context of what appeared to the court to be check kiting, but held as to the checks for insufficient funds that: "Each check did not, in terms, make any representation as to the state of petitioner's bank balance." *Williams v. United States*, 458 U.S. 279, 284–85, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767.

A reasonable application of the prevailing standards of performance for an attorney under *Strickland,* in view of the long and well-established law and a knowledge of the facts recited above, mandated the defense of good faith. An instruction on good faith should have been given on the basis of the testimony of the Government witnesses. This matter was in no way explained at the hearing on remand, and was a basic failure under *Strickland* by defendant's attorney at trial. It was also an indication of a failure by the trial court to monitor the actions of the completely inexperienced trial attorney appointed by the court.

The defendant's trial attorney at the hearing on remand sought to explain that the defense he used was one seeking to "cloud the issues." This cannot be a satisfactory explanation under *Strickland* or any other authority for a selection of a "defense." The defense chosen also had elements of denial of defendant's responsibility for the writing of the corporate checks as his name did not appear on them. However, the defendant had advised the bank officers before trial that he was in charge of the corporation, that the absence of his signature made no difference, and

that he would see that the overdrafts would be covered.

An attorney's trial decisions must be based on a proper exercise of judgment based on an adequate knowledge of the facts and be on correct legal grounds. The bank officials at trial had testified that nothing had been paid on the overdraft. This was repeated several times and not challenged by defendant's attorney. This was not correct as the facts before the court at trial showed the acceptance of the bottling plant for the overdraft and the apparent recovery on foreclosure of some, if not all, of the overdraft. The failure to investigate this use of the security was an obvious departure by defendant's attorney from acceptable standards and the prejudice resulting was apparent. It should also be observed as a comment on the bank records that the bank officials at trial testified several times, without a challenge, that the bank had lost $500,000 in the transactions. At the hearing on remand they testified instead that the bank had written off about $135,000 on the bank's accounts. This may or may not have been a loss. The wide variation on the dollar figures testified to by the bank officials must cast some doubt on the accounting by the bank and the reality of its position. To permit the gross exaggerations at trial was a particular or specific error by counsel to defendant's prejudice. We must conclude that an inadequacy of representation was demonstrated under *Strickland* with prejudice to defendant.

This case must be remanded to the trial court with directions to order a new trial.

IT IS SO ORDERED.