924 F.2d 1052
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donnie MOORE, Petitioner-Appellant,
v.
STATE OF SOUTH CAROLINA, Attorney General of South Carolina,
T. Travis Medlock, Respondents-Appellees.
Donnie MOORE, Petitioner-Appellant,
v.
STATE OF SOUTH CAROLINA, Attorney General of South Carolina,
T. Travis Medlock, Respondents-Appellees.
 Nos. 88-6676, 90-6539.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 12, 1990.
Decided Feb. 12, 1991.
As Amended Feb. 26, 1991 and March 11, 1991.
 
 Appeals from the United States District Court for the District of South Carolina, at Columbia. C. Weston Houck, District Judge. (CA-87-529-3)
 Thomas Ross Haggard, University of South Carolina Law Center, Columbia, S.C., for appellant.
 T. Travis Medlock, Attorney General, Donald John Zelenka, Chief Deputy Attorney General, Columbia, S.C., for appellees.
 D.S.C.
 AFFIRMED.
 Before DONALD RUSSELL, PHILLIPS and MURNAGHAN, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This case involves a habeas petition by a state prisoner. The petitioner pleaded guilty to a series of serious offenses in the Court of General Sessions of Spartanburg County, South Carolina, in June 1984, including two counts of burglary (with a plea of mercy), two counts of assault and battery with intent to kill, one count of armed robbery, and one count of robbery. The counts covered two separate burglaries and two separate victims. Both victims were infirm, aged women living alone in the community. One of the victims was 81 years of age, and the other was 83 years of age. Each burglary occurred late at night and began by the petitioner cutting the screen and opening a window, through which he invaded the home of the victim. In the first instance, he, after effecting his entry into the home, approached the victim, who was working at the time at her sewing machine, brandished his gun and a screw-driver, fired his gun at least once, and began to beat the victim viciously as he demanded money of her. He obtained about $50 at the time. The second incident occurred three days later. The victim was sleeping in her bedroom when the petitioner gained entrance into her home as he had in the first instance. He awakened the victim and began to threaten to kill her and to demand money of her. He proceeded to beat her violently both with his fists and apparently some metal object, and then left, presumably taking the victim's pocketbook with him. When the petitioner's car was found the next day, the officer located a screwdriver with blood on it.
 
 
 2
 At the sentencing, the court was presented with pictures of the two victims taken a day or two after the assault. The photographs demonstrated the serious injuries suffered by the victims as a result of the petitioner's violent attacks.
 
 
 3
 The evidence against the petitioner was overwhelming. In recognition of this, he pleaded guilty to all counts of the indictment. The court sentenced him to 29 years on each of the burglary counts (after accepting the plea for mercy); 20 years for each of the assault and battery with intent to kill counts; 25 years for the armed robbery count; and ten years for the robbery count, each sentence to run consecutively. While the sentences in the several counts aggregated 133 years, the judge correctly advised the petitioner that he would be subject to parole on all sentences after service of ten years. The petitioner did not appeal his sentence. During the sentencing, the judge made this comment:
 
 
 4
 [Y]ou've got yourself in such a position now that there's just no hope for you, I don't believe. The way you beat these women, these pictures here, you did it unmercifully; you showed no mercy whatsoever. This one here you beat with something other than a gun, Ms. Anthony, I believe, horrible looking. I can't believe anyone--
 
 
 5
 But I want to tell you one thing, as far as I am personally concerned you need to stay there the rest of your life. This is a case that you should never get paroled. And they send the Circuit Judge, always, to get any comments the Circuit Judge wants to make. And I guarantee you one thing, if it ever comes to me you'll never get paroled.... And as far as I'm concerned you can stay there forever because you're worse than an animal to do what you did. You don't deserve to be on the streets again ever....
 
 
 6
 [Y]ou are a danger to society, and I don't think you're gonna change at all, in ten years or more.
 
 
 7
 Now, these pictures here with Ms. Anthony, just in case you ever come up for parole, I'm ordering that these be attached to and made a permanent part of the record so that it'll go to Columbia....
 
 
 8
 Because if you ever come up--I hope you never do, because I'm going to do everything I can to keep you from getting out, ever.
 
 
 9
 (J.A. 70-74.)
 
 I.
 
 10
 The petitioner later filed a state post-conviction application, asserting three grounds for relief. The state court dismissed the petition. Two of those grounds are not a part of petitioner's appeal and may be considered as abandoned. We accordingly confine our opinion to the one ground on which the petitioner seeks relief: petitioner's contention that "his sentences were the product of prejudice on behalf of [sic] the sentencing judge," as demonstrated by his language in the course of sentencing the petitioner. In dismissing this ground, the state court judge who heard the petitioner's post-conviction application observed that he had "had an opportunity to review the record in its entirety and [had] heard the testimony at the post-conviction relief hearing" and had "had an opportunity to observe the witnesses and [to weigh] their testimony" with reference to this ground asserted by the prisoner for relief in this action. On the basis of this review, he dismissed this contention and stated:
 
 
 11
 Although the Applicant has alleged such partiality and prejudice, this Court finds that the Applicant has not met his burden of proof on this issue. Although the transcript of record indicates that Judge Moore was outraged over the offenses, the Applicant has not shown that his sentences were the result of any improper motives or prejudice against him. The purpose of a criminal sentence is not only to rehabilitate but to punish. Obviously, Judge Moore was outraged over the offenses and imposed the sentences to punish the Applicant. Although some of Judge Moore's statements he made during sentencing could have been tempered or stated differently, the Applicant has not met his burden of proving that his sentences were the result of improper motives or prejudice on behalf of the sentencing judge. The Court finds this allegation has no merit and should be dismissed.
 
 
 12
 That dismissal was appealed, but the South Carolina Supreme Court denied the petition for reversal. The petitioner then filed his habeas petition in the district court. He asserted the same grounds for relief as he had raised in his state position. The district judge referred the petition to the magistrate judge, who filed a report recommending the dismissal of the petition on all three grounds. That recommendation was heard by the district judge, who agreed with the magistrate judge in dismissing the petition. Judge Houck, in his order of dismissal, found, with respect to the petitioner's claims that the cause should be reversed for bias on the part of the sentencing judge, that:
 
 
 13
 As to petitioner's first ground, the remarks of Judge Moore, while they might have been tempered, do not offend the Constitution. Judge Moore referred to the pictures of Mrs. Anthony, who was one of the petitioner's victims[,] and remarked that the petitioner had beaten the two elderly women unmercifully. The judge further stated that the petitioner did not "deserve to be on the streets again ever," and he told the petitioner that he would never give him a favorable recommendation for parole. There was nothing slanderous in what Judge Moore stated. The petitioner admitted that he forced his way into the homes of two elderly women under cover of darkness for the purpose in each instance of robbing them. He was armed and beat his victims, one of whom suffered a fracture. The magistrate found, and we agree, that the sentences were all within limits prescribed by South Carolina law, and there is nothing in the record to suggest that Judge Moore was affected by any extra-judicial bias. Therefore, petitioner's first ground for relief is hereby denied.[1]
 
 
 14
 This appeal followed.
 
 
 15
 While the petitioner stated three grounds for relief, he has, as we have already said, limited his appeal to one claim: that his sentence was fatally tainted by the bias and partiality of the sentencing judge as demonstrated by his language at the time of sentencing.
 
 II.
 
 16
 Due process assures every litigant, civil or criminal, of a trial by an impartial court, free of bias or the appearance of bias. Ward v. Village of Monroeville, 409 U.S. 57, 62 (1972); United States v. Carmichael, 726 F.2d 158, 160 (4th Cir.1984).[2] In the criminal area, this right continues through the trial, including the sentencing, if the defendant is convicted or pleads, Gardner v. Florida, 430 U.S. 349, 358 (1977) ("it is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause"), and this is true despite the broad discretion exercised by the judge at the sentencing level, United States v. Borrero-Isaza, 887 F.2d 1349, 1352 (9th Cir.1989). The Congress has sought to reinforce this due process right with enforcing powers with a blueprint of procedures for disqualifying judges set forth in Section 144 and Section 455, both of 28 U.S.C. In carrying out the constitutional mandate and its enforcing statutes, the courts have established standards to be followed in determining whether there is such bias or prejudice. The alleged bias, in order to warrant the recusal of a judge, "must be personal, as distinguished from judicial, in nature," United States v. Carmichael, supra, and a personal, as distinguished from a judicial, bias is represented by "an attitude toward petitioner that is significantly different from and more particularized than the normal, general feelings of society at large against convicted wrongdoers," Mims v. Shapp, 541 F.2d 415, 417 (3d Cir.1976). It must also be a bias against the party; it is not sufficient if it is merely a bias against the party's attorney. In re Beard, 811 F.2d 818, 839 (4th Cir.1987); Davis v. Board of School Comm'rs of Mobile County, 517 F.2d 1044, 1052 (5th Cir.1975). In addition, such bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).
 
 
 17
 And this latter requirement has long been the prevailing rule in this circuit, beginning with the decision of Judge Parker in Baskin v. Brown, 174 F.2d 391 (4th Cir.1949):
 
 
 18
 The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective.
 
 
 19
 Id. at 394-95 (citations omitted). We have reiterated that rule in later cases: Fitzgerald v. Penthouse Int'l, Ltd., 691 F.2d 666, 672 (4th Cir.1982) ("The bias or prejudice that would require a judge to recuse himself must come from an extrajudicial source and affect the judge's opinion on the merits.... There is no evidence in this case that the judge's decisions were affected by anything other than the evidence presented by the parties"); NLRB v. Honaker Mills Div. of Top Form Mills, 789 F.2d 262, 265 (4th Cir.1986); Sine v. Local No. 992 Int'l Bhd. of Teamsters, 882 F.2d 913, 914 (4th Cir.1989) ("must allege personal bias or prejudice caused by an extrajudicial source other than what the judge has learned or experienced from his participation in the case").
 
 
 20
 Certain circuits have suggested a "rarely invoked"[3] exception to the general rule that the basis for judicial recusal must be from an extrajudicial source other than the record before the judge, if the judge's conduct during the judicial proceedings "demonstrates such pervasive bias and prejudice that it constitutes bias against a party," Wiley v. Wainwright, 793 F.2d 1190, 1193 (11th Cir.1986), or "where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party," United States v. Meester, 762 F.2d 867, 885 (11th Cir.1985). Both of those cases draw the exception from the language of the court in Davis v. Board of School Comm'rs of Mobile County, 517 F.2d 1044, 1051 (5th Cir.1975). It is interesting that in no one of these three cases did the court apply the exception. The court in each case found no basis for disqualifying the trial judge. Nor have we found any case which has applied this exception. The petitioner, however, has cited two cases which apparently he thinks enforced the exception. We find neither in point.
 
 
 21
 The first case cited by the petitioner as one applying the above exception is Mims v. Shapp, supra. This was a civil rights suit by a number of inmates of a Pennsylvania Correctional Institution. The defendants filed a motion of disqualification against the district judge. They claimed that, in other cases brought by like inmates to secure redress before the judge in their cases, the district judge had made certain statements indicating personal bias against the prison inmates. The defendants bulwarked this with allegations of various statements made by the district judge in other cases by inmates of the same prison indicating, the defendants contended, a bias against prison inmates. The district court dismissed the motion for recusal, but on appeal the court of appeals reversed. However, it reversed on the ground that there was a sufficient showing by the defendants of the bias in this case to be "personal, as distinguished from judicial," a familiar and accepted ground for judicial disqualification. See 541 F.2d at 417. In reaching that decision, the court of appeals did not need to nor did it refer to or base its decision in any way on the exception suggested by the petitioner here.
 
 
 22
 United States v. Cronic, 839 F.2d 1401 (10th Cir.1988), is equally inapposite. That case was on remand from the decision of the Supreme Court, reversing the earlier opinions of the district and circuit courts. United States v. Cronic, 466 U.S. 648 (1984). The issue was the adequacy of representation under the Sixth Amendment. The circuit court stated the criteria to be used in resolving that issue. The Supreme Court found the application of such criteria flawed in this case and remanded it, finding that the defendant-respondent could "make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel" and remanding the case to give the defendant-respondent the opportunity to establish such "specific errors made by trial counsel." 466 U.S. at 666. Cronic was then an adequate represention case under the Sixth Amendment and not a recusal case. The circuit court, on remand, did make a comment on an "appearance of impartiality" by the trial court, but that was not a part of the actual decision, as demonstrated by the court's summary of its conclusion: "We must conclude that an inadequacy of representation was demonstrated under Strickland with prejudice to defendant." 839 F.2d at 1404. This conclusion was consonant with the terms of the Supreme Court remand. We repeat: It, however, was not a decision on judicial recusal.
 
 
 23
 Another case quite similar in many ways with this case, not cited by the petitioner but one in which this "pervasive" exception was raised, is United States v. Rosenberg, 806 F.2d 1169, 1173-74 (3d Cir.1986). The facts of Rosenberg are singularly alike those in this case in many significant ways. In that case, the defendants had been given maximum sentences under several counts in the indictment, had provided that all the sentences were to be enforced consecutively, and had written to the Bureau of Prisons "recommending against parole for these defendants after ten years of imprisonment," adding, "it will be a terrible mistake if these defendants were to be released from prison after serving only 10 years if their attitude then is as it is now." Moreover, during the sentencing, the district judge referred to the defendants as "revolutionaries," identified them with communists, expressed abhorrence of communism, and recommended that the defendants read certain books by former communists who had expressed their disillusionment with communism. The court of appeals declared that the comments of the sentencing judge were conclusions drawn by him "from the facts presented at trial together with his observation of the defendant's lack of remorse at sentencing," and it in turn concluded that "the district court's actions do not provide a basis for the operation of the pervasive bias exception." It found no basis for recusal because of the severity of their sentences or their consecutive consequences. We follow the reasoning and conclusions of Rosenberg and find no basis in this record for finding bias or prejudice tainting the sentence herein.
 
 
 24
 Thus, there is a small number of cases stating the "rarely invoked" exception to the traditional rule on judicial impartiality, but in no case to which we have been referred or which we have found was this exception the ground for the reversal of a conviction.
 
 III.
 
 25
 Nor do we find there were such facts here as to warrant the application of the "rarely invoked" exception. Appellate review of a trial court's disqualification is under the standard of abuse of discretion. We find no abuse of discretion in this case. Absent procedural defects in the sentencing, the rule in federal courts is that a trial court's sentence, if within statutory limits, will not be disturbed. United States v. Tucker, 404 U.S. 443, 446 (9th Cir.1972). There can be no question that judicial disqualification in this case was not mandated under the traditional standard for determining judicial disqualification as stated in Carmichael. Nor does the petitioner contend that the traditional rule would require judicial recusal here. There is no contention that the sentencing judge acted on the basis of a misstatement of the facts of "constitutional dimensions" as in Tucker, supra, or of a prejudice against race as in United States v. Borrero-Isaza, supra, or that the sentencing was not within statutory limits. Nor is there any contention of personal bias arising out of anything occurring prior to trial. The petitioner relies rather on the "rarely invoked" and even more rarely, if ever, applied exception stated in Davis, supra. And it relies on a number of circumstances to support this argument.
 
 
 26
 The first circumstance the petitioner cites in support of the application of the exception is the sentencing judge's comment on the seriousness of the petitioner's offenses and the merciless brutality he inflicted on the two aged victims in their homes. This vicious conduct of the petitioner was not some spontaneous reaction to an unexpected situation, such as a physical attack by the other party; these were carefully-planned invasions of the homes of these defenseless women, with intent to extort by force and violence money from them. There can be no disputing the crafty planning followed by the petitioner in breaking into the homes of the two victims in the late nighttime--even firing a gun in one instance, accompanied by the threat that he would kill the victim if she did not give him her money. He was not content with this threatening action; he proceeded to beat the victims mercilessly, and all to reinforce his demand for money of the victim. The aged victims of the petitioner's assaults were before the sentencing judge, and pictures of the injuries suffered by them at the hands of the petitioner were added to the record in the proceedings before him. All of these facts were carefully made out before the sentencing judge during the sentencing process.
 
 
 27
 The petitioner did not dispute any of these facts. Under these circumstances, it was perfectly permissible for the sentencing judge, in the course of sentencing the petitioner, to comment upon all these facts, on the gravity of the petitioner's offenses, and on the serious injuries the victims of his criminal activity had suffered at the petitioner's hands. We upheld such right in the recent opinion (one of the last written by former Chief Judge Haynsworth) of United States v. Guglielmi, 819 F.2d 451, 456 (4th Cir.1987), where we declared that "it is entirely appropriate for a judge, when imposing a sentence, to comment upon the nature and gravity of the offense." The Supreme Court has been even more emphatic. In United States v. Tucker, supra, it declared that a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." And in an unusual case from the Eighth Circuit, where the contention was that the sentencing judge had demonstrated bias by his expressions of strong repugnance at crime, particularly in the black community (the defendant was black, as was the judge), the court dismissed the contention, adding, "It is up to the sentencing judge, within broad limits, to determine how much or how little he or she will say." United States v. Glass, 761 F.2d 479, 480 (8th Cir.1985). And the fact that the sentencing judge does this with some vehemence will not render his action such as to invoke constitutional protection. Baskin v. Brown, supra; United States v. Borrero-Isaza, 887 F.2d at 1357.
 
 
 28
 The sentencing judge's comments in this case were no doubt strong. The sentencing judge was manifestly impressed by the sight of the injuries suffered by the aged victims, as he understandably could have been. Perhaps it would have been better had the sentencing judge "tempered" (to use the word of the magistrate judge hearing the habeas case) his remarks, but we are inclined to agree with the magistrate judge that such remarks indicated not an impermissible bias against the petitioner, but rather an understandable reaction against the manifest serious injury suffered at the hands of the petitioner by the two victims, both advanced in years, infirm, attacked in their own homes, in the dead of night, without any means of protecting themselves against the assault of the 24-year-old petitioner. We would not, though, be understood as commending the sharp language of the sentencing judge, but, all in all, we do not think it meets the standards for finding improper conduct of such constitutional magnitude as will be violative of due process.
 
 
 29
 The second circumstance asserted by the petitioner to establish "pervasive" judicial bias is the sentence itself and the comments of the sentencing judge on parole. The sentence was close to the maximum in each count. The sentences were to run consecutively, too. The petitioner calculates that the combined sentences add up to 133 years, and such a sentence, he argues, is unconscionable. However, as the sentencing judge said, the petitioner could be paroled by the Board of Pardons at any time after ten years' service. In essence, then, the length of the petitioner's sentence--whether ten years or longer--was within his control, dependent on his conduct while incarcerated, his demonstration of reformation, and rehabilitation. Absent procedural defects in the sentencing, the rule in federal courts is that a trial court's sentence, if within statutory limits, will not be disturbed. United States v. Tucker, 404 U.S. at 447. The facts in Rosenberg are singularly alike those here. The court found the sentencing judge's comments did not rise to the magnitude of a constitutional violation, and we think the same conclusion is equally applicable here. We accordingly affirm the judgment herein dismissing the petition.
 
 
 30
 AFFIRMED.
 
 
 31
 PHILLIPS and MURNAGHAN, Circuit Judges, joined.
 
 
 
 [1]
 We quote only this part of the order of the district judge, since this is the only part of the opinion appealed here by the petitioner
 
 
 [2]
 The rule as to "appearance of partiality," especially when the objection relates to "judicial rulings ... in the case or prior legal proceedings" (see United States v. Haldeman, 559 F.2d 31, 132-33, n. 299 (D.C.Cir.1976), cert. denied, 431 U.S. 933 (1977); McCalden v. California Library Ass'n, 919 F.2d 538, 547 (9th Cir.1990)), is not to be applied "woodenly," but, since such rule is so subject to abuse by disgruntled litigants, the objection must be supported with facts establishing a "rational basis" for the objection. In Re Virginia Electric Power Co., 539 F.2d 357, 361 (4th Cir.1970). And recently, in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), the Supreme Court seems to have established the standard for determining whether the objection has a rational basis to be whether "a reasonable person, knowing all the facts," would have concluded the judge was biased. We think this to be the meaning to be deduced from this decision, even though the actual issue in the case was whether partiality could arise "even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge." Id. at 860-61 (citations omitted)
 
 
 [3]
 This description of the exception is taken from United States v. Rosenberg, 806 F.2d 1169, 1174 (3d Cir.1986)