**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 4 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM RAYMOND MAYES,

      Petitioner-Appellant,

v.

GARY E. GIBSON, Warden, Oklahoma
State Penitentiary,

      Respondent-Appellee.

No. 99-6047

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 96-CV–1623)**

---

Mark Henricksen (Lanita Henricksen with him on the briefs), Henricksen & Henricksen,
El Reno, Oklahoma, for Petitioner-Appellant.

William Humes (W.A. Drew Edmondson, Attorney General of Oklahoma, with him on
the brief), Assistant Attorney General, Oklahoma City, Oklahoma, for Respondent-
Appellee.

---

Before **BRORBY**, **PORFILIO**, and **LUCERO**, Circuit Judges.

---

**PORFILIO**, Senior Circuit Judge.

---

In 1990, Petitioner William Raymond Mayes was convicted of first degree murder and conspiracy to commit murder. He was sentenced to death for the former and to ten years' imprisonment for the latter. After exhausting his direct and collateral appeals in the Oklahoma courts, *Mayes v. Ward*, 887 P.2d 1288 (Okla. Crim. App. 1994), *cert. denied*, 513 U.S. 1194 (1995); *Mayes v. State of Oklahoma*, 921 P.2d 367 (Okla. Crim. App. 1996), Mr. Mayes filed a petition under 28 U.S.C. § 2254 for habeas corpus in federal court, asserting numerous bases for relief. The district court denied all of Mr. Mayes' grounds for relief, and he brings them to us on appeal.

Of Mr. Mayes' numerous claims, only one –the claim of ineffective assistance of counsel in the penalty phase of the trial– resonates with this court. We are deeply disturbed by the manner in which defense counsel apparently handled the sentencing phase of Mr. Mayes' trial. However, the record does not provide an adequate basis for a determination of whether counsel's performance was ineffective to a degree violative of the Sixth Amendment. We therefore vacate the district court's order dismissing the § 2254 petition and remand for the court to conduct an evidentiary hearing on the merits of Mr. Mayes' claim of ineffective assistance of counsel during the sentencing phase.

## I. Background

On November 19, 1987, the body of Phillip Trammell was discovered near the front door of his home outside of Waurika, Oklahoma. Mr. Trammell had been beaten,

stabbed, and shot.  After a two-year investigation, Margaret Trammell, his wife, and William Mayes were arrested for the murder.  The two were tried separately.[1]

In May 1990, the State proceeded to trial under the theory that Mr. Mayes and Mrs. Trammell were involved in an extramarital affair and killed Mr. Trammell to collect his life insurance policy.  In his defense, Mr. Mayes admitted Mrs. Trammell had propositioned him to commit the murder, but maintained he had refused the offer and was not physically involved in the killing.  After a nine-day trial, the jury deliberated approximately four and one-half hours before finding Mr. Mayes guilty of both murder and conspiracy to commit murder.

The trial court received the jury's verdict at approximately 5:00 p.m. and proceeded directly into the penalty phase.  In the penalty phase the State proffered two aggravating circumstances to justify imposition of the death penalty:  first, Mr. Mayes posed a "continuing threat to society," and second, the crime committed was especially "heinous, atrocious or cruel."  The prosecution presented no new evidence in the penalty phase, choosing instead to rely on the evidence presented in the guilt phase of the trial.

Defense counsel countered with only the testimony of Mr. Mayes himself.  In a statement covering seven pages of a more than 2,500 page transcript, Mr. Mayes gave a brief description of his family, educational background, and work history and then reaffirmed his denial of any physical involvement in the murder of Phillip Trammell.  In

---

[1] Mrs. Trammell was sentenced to life in prison.

his closing argument, defense counsel directly attacked the State's evidence supporting the "continuing threat" aggravator, arguing Mr. Mayes' past showed no propensity towards violence. Counsel also relied on what has been described as a "residual doubt" defense, emphasizing there was no direct evidence Mr. Mayes actually committed the murder, and urging the jurors not to return a verdict of death if they had a "reasonable doubt about any of this." *See Lockhart v. McCree*, 476 U.S. 162, 181 (1986) (noting "residual doubts" by a jury in guilt phase are effective grounds for argument in capital sentencing phase).

The entire mitigation phase took approximately two hours, and the jury retired to begin deliberations at 7:15 p.m. At 10:45 p.m., the jury passed a note to the court asking, "[i]f life without parole is given, is there ever a possibility of release from prison?" The court, without objection from counsel, sent the jury a note indicating the instructions given were self-explanatory. At 1:20 a.m., the jury returned from deliberations. Although it rejected the "continuing threat" aggravator, the jury did find the murder to be "heinous, atrocious and cruel," and sentenced Mr. Mayes to death.

## II. Ineffective Assistance of Trial Counsel

Mr. Mayes is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel if his allegations, if true and not contravened by the record, would entitle him to habeas relief. *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998).[2]

---

[2] We note the AEDPA's limitation on evidentiary hearings, § 2254(e)(2), does not
(continued...)

Whether Mr. Mayes' allegations, if proven, would entitle him to habeas relief is a question governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, habeas relief may only be granted in situations where the state court's adjudication on the merits was "contrary to, or involved an unreasonable application of," Supreme Court precedent, or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

The Supreme Court standard governing the deprivation of the Sixth Amendment right to effective assistance of counsel is the familiar two part approach of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, Mr. Mayes must demonstrate not only that his attorney's performance was deficient, as measured against an objective

---

[2](...continued)

apply to Mr. Mayes' claim. Under § 2254(e)(2), if a petitioner fails to develop the factual basis of a claim in State court proceedings, he is not entitled to an evidentiary hearing unless he shows: (1) the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence."

The restrictions of § 2254(e)(2) do not apply, however, unless the petitioner's failure to develop the factual predicate for his claim is a result of his own, or his counsel's lack of diligence. *Williams v. Taylor*, ___ S. Ct. ___, No. 99-6615, 2000 WL 3853364, at *8 (U.S. Apr. 18, 2000). *See also Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998) (holding § 2254(e)(2) does not apply where the petitioner "diligently sought to develop the factual basis underlying his habeas petition, but a state court prevented him from doing so"). Here, Mr. Mayes raised the need for an evidentiary hearing in both the Oklahoma Court of Criminal Appeals on direct appeal and the State district court on collateral appeal. He has thus acted diligently to develop the factual basis of his habeas claim, and is not subject to the limitations of § 2254(e)(2).

standard of reasonableness, but also a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different.  ***Id.*** at 688, 694.  In determining whether a particular performance is deficient, the Supreme Court admonishes us to free our inquiry from "the distorting effects of hindsight" by indulging in a strong presumption counsel acted reasonably.  ***Id.*** at 689.  Thus, counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." ***Id.*** (citing ***Michel v. Louisiana***, 350 U.S. 91, 101 (1955)).

While cognizant of the heavy presumption of reasonableness we must afford trial counsel's actions, we are also conscious of the overwhelming importance of the role mitigation evidence plays in the just imposition of the death penalty.  The presentation of mitigation evidence affords an opportunity to humanize and explain -to individualize- a defendant outside the constraints of the normal rules of evidence.  Indeed, in capital cases, where the need for individualized sentencing is most critical, the right to present mitigating evidence to the jury is constitutionally protected.  ***Williams v. Taylor***, ___ S. Ct. ___, No. 98-8384, 2000 WL 385369, at *16 (U.S. Apr. 18, 2000).  *See also **Lockett v. Ohio***, 438 U.S. 586, 605 (1978) ("The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases.").  We are therefore compelled to insure the sentencing jury makes an individualized decision while equipped with the "fullest information possible concerning the defendant's life and characteristics," and must scrutinize carefully any decision by

counsel which deprives a capital defendant of all mitigation evidence. *Lockett*, 438 U.S. at 603 (quoting *Williams v. New York*, 377 U.S. 241, 247 (1949)).

Mindful of the presumption of reasonableness afforded to trial counsel's actions and jealous of the need to safeguard the Sixth Amendment, we turn to the merits of Mr. Mayes' claim. Mr. Mayes contends he was deprived of his Sixth Amendment right to effective assistance of counsel by his trial counsel's failure to conduct any investigation or present any mitigation evidence –save for Mr. Mayes' own brief testimony– during the penalty phase of the trial.[3]

The Sixth Amendment imposes on counsel "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The ambit of "reasonable investigations" is less than clear, and reasonableness is by necessity circumstantial. *Id.* at 688. Nonetheless, this court has consistently held "in a capital case the attorney's duty to investigate all possible lines of defense is strictly observed." *Stouffer v. Reynolds*, 168 F.3d 1155, 1167 (10th Cir. 1999). *See also* *Smith v. Gibson*, 197 F.3d 454, 463 (10th Cir. 1999); *Duvall v.*

---

[3] Mr. Mayes also claims his counsel was deficient for failing to order a psychological evaluation and failing to present evidence of his mental disabilities during sentencing. This claim of deficiency fails. Nothing in the record indicates a reasonable attorney would have believed Mr. Mayes' mental condition was a potentially mitigating factor. *Smith v. Gibson*, 197 F.3d 454, 463 (10th Cir. 1999) (finding no deficient performance where nothing in record would suggest Petitioner's mental condition was significant mitigating factor). In fact, the psychologist who examined Mr. Mayes after his direct appeal concluded that to a lay observer he would appear to function normally. We therefore see no error in trial counsel's failure to inquire into Mr. Mayes' mental condition.

*Reynolds*, 139 F.3d 768, 777 (10th Cir. 1998), *cert. denied,* 119 S. Ct. 345 (1998); *Williamson v. Ward,* 110 F.3d 1508, 1514 (10th Cir. 1997).

As proof of both his counsel's failure to conduct a reasonable investigation, and that persuasive mitigation evidence was readily available, Mr. Mayes proffered affidavits from eleven acquaintances and family members which indicate each would have testified on his behalf during the penalty phase had they been asked to do so. All the affiants aver they were never contacted by Mr. Mayes' trial attorney. In fact, Mr. Mayes' mother states she contacted trial counsel prior to trial and was told "not to worry about it." All of the affidavits contain anecdotal evidence of Mr. Mayes' kind and gentle demeanor, generosity, respectfulness, and work ethic. All but that of his mother indicate he was abused and neglected by his mother and stepfather.

We review Mr. Mayes' affidavit evidence without deference to the factual findings of the state court. *Nguyen v. Reynolds*, 131 F.3d 1340, 1359 (10th Cir. 1997) (federal courts need not give presumption of correctness to factual findings of the state court if the habeas petitioner did not receive a full, fair, and adequate hearing in the state court proceeding on the matter raised in the habeas petition). As Mr. Mayes was denied an evidentiary hearing into the matter of ineffective assistance, we are in the same position to evaluate the factual record as was the state court. *Miller,* 161 F.3d at 1254.

We believe the only possible inference from Mr. Mayes' affidavit evidence and the record as a whole is that any investigation conducted by defense counsel fell well short of

the mark of reasonableness. All of the eleven affiants were obvious and easily available sources of mitigation evidence– family members and close acquaintances– and all indicate they were not contacted by defense counsel. *See **Clayton v. Gibson***, 199 F.3d 1162, 1179 (10th Cir. 1999) (finding defense counsel's failure to contact defendant's immediate family troubling).

Our decision that defense counsel failed to conduct reasonable investigations, necessitates an inquiry into whether this failure was prompted by a reasonable decision not to investigate. ***Strickland***, 466 U.S. at 691. This inquiry, however, is stymied by the state of the record. In the absence of an evidentiary hearing we can only speculate as to counsel's motivations. We simply cannot condone the administration of the death penalty on the basis of speculation.

Without the benefit of an evidentiary hearing, the district court attributed Mr. Mayes' counsel's failure to offer mitigation witnesses to a reasonable tactical decision. The district court opined that because Mr. Mayes defended himself by professing a lack of personal involvement in the murder, presentation of other mitigating evidence "could be perceived as inconsistent with this argument or, at least, would detract from it; so a decision to omit evidence concerning other mitigators is a defensible tactical decision."

That reasoning concerns us in two respects. First, the uncontroverted facts in the record demonstrate Mr. Mayes' attorney never contacted any mitigation witnesses. Without inquiring into what the witnesses might say, counsel had no basis for deciding

their testimony would be inconsistent with his defense theory.  *See United States v. Cronic*, 839 F.2d 1401, 1404 (10th Cir. 1988) ("An attorney's trial decisions must be based on . . . an adequate knowledge of the facts.").  Second, after examining the affidavit evidence and defense counsel's argument during the penalty phase, we see no inconsistency.  In the penalty phase, defense counsel argued not only that his client was not physically involved in the murder, but also that the "continuing threat" aggravator was inappropriate because his client was nonviolent.  The proffered affidavit testimony directly supports counsel's contention Mr. Mayes was a nonviolent person and in no way undermines the argument that he was not physically involved in the murder.

We have no doubt, on the facts in this record, that Mr. Mayes' representation during the sentencing phase of his trial was constitutionally deficient.  However, before Mr. Mayes is entitled to a hearing, we must determine whether he was prejudiced by his counsel's deficiency.  Our inquiry is whether there is a reasonable probability that, absent the errors, the jury would have concluded the balance of aggravating and mitigating circumstances did not warrant death.  *Strickland,* 466 U.S. at 695.  To make this determination, we weigh the errors committed against the mitigating evidence actually presented, the strength of the State's case, and the aggravating factors the jury found.  *Clayton v. Gibson*, 199 F.3d at 1178-79.

We begin with the strength of the State's case against Mr. Mayes.[4]  The evidence of Mr. Mayes' guilt cannot fairly be described as overwhelming.  The State did marshal significant evidence Mrs. Trammell solicited Mr. Mayes to kill her husband, however, the evidence Mr. Mayes actually committed the crime was entirely circumstantial.  We also note there is considerable evidence the jury was uncertain whether this crime warranted the death penalty.  Only after deliberating for over six hours and questioning the judge about the meaning of a sentence of life without parole, did the jury return a sentence of death.  Even then, the jury found only one aggravator, rejecting the prosecution's argument that Mr. Mayes posed a continuing threat to society.[5]

Against this backdrop we examine Mr. Mayes' proffered mitigation evidence.  The Oklahoma Court of Criminal Appeals dismissed the affidavit evidence, finding the affidavits offered only "faint praise," which came in "couched terms such as Appellant 'had his faults'; he 'had his share of problems'; he 'was not always a saint'; he 'was not always

---

[4] Our evaluation of the strength of the State's case is by no means intended to question the propriety of Mr. Mayes' conviction.  It is motivated by the Supreme Court's observation that "[a] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." ***Strickland v. Washington***, 466 U.S. 668, 696 (1984).

[5] We note in the trial of Mr. Mayes' co-defendant, Mrs. Trammell, the jury rejected the "heinous, atrocious or cruel" aggravator.  Even though the verdict in Mrs. Trammell's case has neither binding nor conclusive effect here, it does underscore the justiciability of the applicability of the heinous, atrocious and cruel aggravator to the facts of this murder.

truthful with me and sometimes he liked to act like a big shot'; or 'I know Bill has not always done the right thing in his life.'"

We have considered the affidavit testimony in its entirety and reach a different conclusion. In our view, when the phrases excerpted by the Oklahoma court are returned to their appropriate context, the affidavits constitute effective mitigation evidence. For example, the Oklahoma court extracted the excerpt, "Bill has his faults," from the statement:

> Bill has his faults, but I believe he is a good person. I will never believe he is capable of killing someone. If he were to walk out of prison tomorrow he would be welcome to come live with me and my family.

Similarly, the observation that Mr. Mayes "had his problems" was derived from the statement "[a]lthough I realized that Bill had his share of problems, I love him and think he is basically a good hearted person." The characterization of Mr. Mayes as "not always a saint" comes from affidavit testimony which reads:

> I know that Billy was not always a saint, but I also think he has had a very hard life. I think he is basically a good person and had I been asked to testify, I would have told the jury I did not want him to die and asked them not to sentence him to death.

Finally, Mr. Mayes' ex-wife, Janet Fessler, stated, "Billy was not always truthful with me and sometimes he liked to act like a 'big shot.'" She went on to explain, however,

> I believe he acted this way because he was trying to be the person he thought I wanted him to be. Billy was very insecure and emotionally unstable and we fought over his jealousies but he never hit me.

Rather than faint praise, we believe the tone of these statements is consistent with those commonly offered in mitigation. A rational witness facing a jury fresh from finding the defendant guilty of murder might well seek to gain legitimacy with the jurors by acknowledging that she understood the defendant "has his faults." Indeed, a jury convinced the defendant had committed murder might find a mitigation witness willing to acknowledge the defendant's faults before pleading for his life more credible than a witness who seemed overly zealous and uncompromising in her support for the defendant.

Determining whether there is a reasonable probability that had the jury heard this mitigation evidence the outcome of Mr. Mayes' sentencing would have been different requires us to speculate on the deliberative process of a jury, an activity we are loath to undertake. Nevertheless, given the relative weakness of the State's case, the jury's obvious struggle in deliberations, and the fact that only one aggravator was found, we must conclude Mr. Mayes' allegations meet "the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696. Consequently, Mr. Mayes is entitled to an evidentiary hearing.

### III. Other Claims

In his petition for habeas relief, Mr. Mayes raised a battery of other issues. None merit habeas relief.

1. **Denial of Pretrial Motion for Change of Venue**

Mr. Mayes asserts pretrial publicity prejudiced the jury against him, and the trial court's refusal to change venues deprived him of his right to a fair trial. On habeas, we review the trial court's denial of a change of venue for abuse of discretion. *Stafford v. Saffle*, 34 F.3d 1557, 1565 (10th Cir. 1994). We have reviewed both the voir dire and the publicity submitted by Mr. Mayes, and conclude no evidence was presented of either actual juror prejudice or the type of community-wide hostility necessary to presume juror prejudice. *See United States v. Abello-Silva*, 948 F.2d 1168, 1176-78 (10th Cir. 1991) (actual juror prejudice does not exist if juror "can lay aside his opinion and render a verdict based on the evidence presented in court" and juror prejudice presumed only if an "irrepressible hostile attitude pervaded the community"). The trial court did not abuse its discretion in denying Mr. Mayes' motion for a change of venue.

### 2. Late Receipt of Bill of Particulars

The record indicates defense counsel did not receive the Bill of Particulars until four days before the beginning of trial. Mr. Mayes claims as a result he was deprived of due process because he received inadequate notice of the State's intention to seek the death penalty, and insufficient time to investigate two witnesses endorsed for the first time in the bill. In this context, due process "mandates that a defendant receive adequate notice that he could receive the death penalty . . . [and] have a meaningful opportunity to deny or explain the State's evidence used to procure a death sentence." *Duvall v. Reynolds*, 139 F.3d at 797 (citations omitted). Our review of the record indicates defense counsel had notice of

- 14 -

the State's intention to pursue the death penalty long before receipt of the Bill of Particulars. Nor does the record indicate Mr. Mayes was prejudiced by the late endorsement of witnesses. Defense counsel conducted an adequate cross-examination of the witnesses and had a meaningful opportunity to explain the evidence they offered.[6]

### 3. First Stage Jury Errors

Mr. Mayes raises several complaints about the conduct of voir dire. He contends the trial judge improperly questioned prospective jurors about their ability to impose the death penalty and improperly excused two jurors based on their answers. The trial judge indeed erred in asking jurors whether they could impose the death penalty "without violence to your conscience," rather than propounding the appropriate inquiry of whether their opposition to the death penalty would "prevent or substantially impair" their ability to follow the law. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985). Despite this initial error, review of the voir dire indicates the trial judge did not dismiss any jurors without first clarifying that they opposed the death penalty to a degree which would have made it impossible for them to follow the law, thus insuring the jurors ultimately excused did meet the *Wainwright* test.

---

[6] Petitioner also attempts to construct a *Massiah* claim with regard to the testimony of one of the witnesses, Ron Allan, who was a jailhouse informant. *Massiah v. United States*, 377 U.S. 201, 205-07 (1964) (holding defendant's Fifth and Sixth Amendment rights were violated when law enforcement officials surreptitiously elicited incriminating statements in the absence of counsel after defendant had been indicted). This claim was not exhausted in state court and is thus procedurally barred in this court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Mr. Mayes also alleges the trial judge improperly limited his counsel's ability to question prospective jurors about their bias toward law enforcement officers. In a petition for habeas, our inquiry into the conduct of voir dire is limited to whether the trial court's restriction on voir dire rendered the trial fundamentally unfair. *See **Mu'Min v. Virginia**,* 500 U.S. 415, 425-26 (1991). In this case no fundamental unfairness occurred. In fact, review of voir dire shows defense counsel succeeded in probing potential bias toward law enforcement officers despite the two instances in which the trial court limited questioning.

## 4.     Evidentiary Rulings

Mr. Mayes proffers numerous evidentiary errors which allegedly occurred at trial, including: evidence Mrs. Trammell had settled a civil lawsuit brought to determine whether she or her children should receive the proceeds of the victim's life insurance policy; evidence of prior bad acts by Mr. Mayes; evidence Mrs. Trammell had taken a polygraph examination; hearsay statements by Mrs. Trammell; and admission of crime scene photos. Habeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results. ***Smallwood v. Gibson***, 191 F.3d 1257, 1275 (10th Cir. 1999). Having reviewed the record, and having considered both the individual and aggregate effect of these alleged errors, we hold Mr. Mayes was not deprived of a fair trial.

## 5.     Denial of Recross

Mr. Mayes complains his rights under the Confrontation Clause were violated when his counsel was prohibited from recross-examining a witness about whether the witness had received any benefit from the prosecution in exchange for his testimony. We see no violation of the Confrontation Clause; defense counsel had an opportunity to question the witness' possible bias during cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (holding purpose of confrontation is to secure the opportunity for cross-examination). In addition, any error was harmless. Review of the record indicates defense counsel successfully attacked the credibility of the witness, and that the incriminating evidence the witness did offer was cumulative of that offered by other witnesses.

### 6. Sufficiency of the Evidence

Mr. Mayes contends there was insufficient evidence presented at trial to support a conviction for either murder or conspiracy. The standard of review of a claim relating to the sufficiency of the evidence is whether, "after considering all the trial evidence in the light most favorable to the prosecution . . . any rational trier-of-fact could not have found each separate element of the crime charged was proved beyond a reasonable doubt." *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). There is some debate in this circuit whether under the AEDPA a claim challenging the sufficiency of the evidence should be treated as a question of law or as a question of fact. *See Moore v. Gibson,* 195 F.3d 1152, 1176-77 (10th Cir. 1999) (summarizing split in the case law). If we treat the claim as a question of law, then under

- 17 -

§ 2254(d)(1) we should only overturn the state court's determination if its decision was contrary to established Supreme Court precedent. If we treat the claim as a question of fact, then under § 2254(d)(2) it should be overturned only if it represents an unreasonable determination of the facts in light of the evidence. In this case, the difference between treating the claim as question of law or fact is inconsequential; after review of the record, we cannot conclude the state court's decision is either contrary to the ***Jackson v. Virginia*** "rational trier-of-fact" test, or an unreasonable determination of the facts.

### 7. Prosecutorial Misconduct

Mr. Mayes also alleges the prosecutor deprived him of a fair trial by making denigrating remarks, expressing personal opinions about his guilt, and improperly arousing sympathy for the victim. At this stage of review, habeas relief is not warranted unless the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ***Donnelly v. DeChristoforo***, 416 U.S. 637, 643 (1974). After consideration of the prosecutor's comments in the context of the proceeding as a whole, we do not believe the conduct rose to a level that rendered Mr. Mayes' conviction a denial of due process. *Id.* (noting prosecutor's comments must be considered in the context of the entire trial). Therefore, we reject Mr. Mayes' claim of prosecutorial misconduct.

### 8. Sentencing Jury Errors

Mr. Mayes raises several challenges to the second stage jury instructions. All of his challenges, however, have been previously addressed and rejected by this court. *See*

*Smallwood v. Gibson*, 191 F.3d 1257, 1270-71 (10th Cir. 1999) (upholding the constitutionality of the precise Oklahoma jury instructions given in Mr. Mayes' sentencing phase); *Saffle v. Parks*, 494 U.S. 484, 490 (1990) (holding anti-sympathy instruction given during sentencing not violative of Eighth Amendment).

Mr. Mayes also contests the trial judge's decision not to answer the jury's note during sentencing deliberations asking "[i]f life without parole is given, is there ever a possibility of release from prison?" Mr. Mayes relies on the holding in *Simmons v. South Carolina*, 512 U.S. 154 (1994) (plurality), that when a defendant's future dangerousness is at issue and state law prohibits the defendant's release on parole, it violates due process to fail to inform the jury the defendant is ineligible for parole. *Simmons* is, however, inapposite to this case. The sentencing jury in *Simmons* was given a choice between life in prison and death, which, because the jury might have thought the defendant could be released on parole, "creat[ed] a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." *Id.* at 161. No such false choice was created here. The court instructed the jury on life, life without possibility of parole, and death. We believe this three-way choice fulfills the *Simmons* requirement that a jury be notified if the defendant is parole ineligible and defeats Mr. Mayes' claim.

## IV. Conclusion.

We **VACATE** the district court's order denying relief and **REMAND** for an evidentiary hearing addressing those concerns we have found deficient in the record. In all other respects, we **AFFIRM** the district court's order.

No. 99-6047 – MAYES V. GIBSON

**BRORBY**, Circuit Judge.

I respectfully dissent.

The United States Supreme Court has directed us to determine whether there is a *reasonable probability* that, but for Mr. Mayes' counsel's deficient performance, the result of Mr. Mayes' sentencing proceeding would have been different (*i.e.*, the jury would have concluded the balance of aggravating and mitigating circumstances did not warrant death). *Strickland v. Washington*, 466 U.S. 668, 688, 695 (1984). I am of the opinion this determination is, unavoidably, a subjective one, formulated in the mind of individual jurists, each bringing his or her own professional and life experiences to bear on the issue of what a jury would have concluded if ....

The majority has reviewed the eleven affidavits Mr. Mayes proffered as mitigating evidence and determined there is a reasonable probability that had the jury heard this mitigation evidence the outcome of Mr. Mayes' sentencing would have been different. Applying the same standard, I must agree with the conclusion of the Oklahoma Court of Criminal Appeals and the United States District Court for the Western District of Oklahoma – the proffered mitigation evidence does not satisfy the prejudice component of the *Strickland* test. For

that reason, I do not believe Mr. Mayes is entitled to an evidentiary hearing.  I would affirm the district court's order denying habeas relief on all grounds.