Vincent Allen JOHNSON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–91–884.

Court of Criminal Appeals of Oklahoma.

Oct. 23, 1995.

Order Modifying Opinion on Grant of Rehearing Feb. 20, 1996.

---

William H. Layden, Jr. and Joseph L. Layden, McAlester, for Defendant.

Monte Brown, District Attorney and Ronald L. Boyer, Assistant District Attorney, McAlester, for the State.

William H. Luker, Assistant Appellate Defender, Norman, for Appellant.

Susan Brimer Loving, Attorney General, William L. Humes, Assistant Attorney General, Oklahoma City, for Appellee.

### *OPINION*

JOHNSON, Presiding Judge:

Vincent Allen Johnson was tried by a jury and convicted of First Degree Malice Aforethought Murder in the District Court of Pittsburg County, Case No. F–91–114. The jury found the existence of the following three aggravating circumstances: (1) Appellant had previously been convicted of felonies involving the use or threat of violence to the person; (2) Appellant committed the murder for remuneration or the promise of remuneration; and (3) Appellant posed a continuing threat to society. In accordance with the jury's recommendation, the Honorable Steven W. Taylor sentenced Appellant to death. From this judgment and sentence, Appellant has now perfected his appeal to this Court.

This case concerns the homicide of Shirley A. Mooneyham at her home in rural Pittsburg County, Oklahoma, on February 8, 1991. The victim was shot six times and died of the gunshot wounds to her head and chest.

Prior to her death, Mooneyham was, or had been, the common law wife of Ted Holt. However, they had been having difficulties. The two were no longer living together, and Robin Dawn Jackson, Holt's fourteen year

old niece, had moved in with Mooneyham. Holt would frequently harass Mooneyham by telephone. On those occasions, she would unplug her telephone. Apprehensive of Holt, Mooneyham also kept a .38 caliber pistol on her kitchen table and with her when she left home.

Appellant lived in Kinta, Oklahoma, where he had been raised. In November of 1990, Appellant met Deborah Elaine Johnson and they decided to live together. They first stayed with Appellant's sister, Clara Walker, in Kinta. Later, they moved into the residence of John Crain, who was seriously ill, and lived in Lona Valley between Kinta and Quinton, Oklahoma. Appellant and Deborah had agreed to help care for Crain and take care of his horses. Appellant and Deborah Johnson were later married on January 8, 1991.

Prior to the murder, Crain introduced Appellant and Deborah to Ted Holt. Deborah was asked to leave the room while the men talked and was unable to hear any of the conversations. Not long after that first meeting, Holt returned to Crain's home along with a younger man. Appellant, Crain and Deborah Johnson were all present on this occasion, Deborah was again asked to leave the room, but this time she listened to their conversation from an adjoining bedroom. Crain and Holt were very upset with Shirley Mooneyham. Deborah never heard exactly what they were mad about, but she did hear them say that Shirley needed to be eliminated. She did not hear Appellant say anything during this discussion.

The discussion lasted approximately forty-five minutes to an hour. Later, after Holt and his companion had left, Deborah asked Appellant what the discussions were about. Appellant said that "they" had asked him to kill Shirley Mooneyham. Deborah begged Appellant not to get involved.

Between the time of the second meeting and the murder, Deborah saw Appellant and Crain trade pistols. Deborah described the gun that Crain gave Appellant as being a dark steel revolver with white handles.

At approximately 6:30 a.m. on February 8, 1991, Robin Jackson got up to get ready for school. At approximately 7:15 a.m., Robin said goodbye to Mooneyham and went to catch her school bus. Mooneyham was still in bed at this time.

Meanwhile, at the Crain residence, Appellant told Crain he was going to take care of business. Appellant then went to his place of employment to tell them he would not be working that day. Employees were required to arrive at work by 7 a.m. to find out if there was any work for them that day. After checking in at work, Appellant drove to a driveway near Shirley Mooneyham's house and waited until the school bus passed. He then went to Mooneyham's residence. They talked for a few minutes and Mooneyham invited Appellant into her home.

Mooneyham and Appellant sat at the table in the kitchen. Mooneyham's .38 caliber pistol was lying on the table. While they talked, they smoked some marijuana together. After approximately forty-five minutes, Mooneyham got up to make coffee. While her back was to Appellant, he grabbed Mooneyham's pistol from the table and pulled his pistol from his pocket. When Mooneyham turned around, she said "Oh, Vince, don't" just as Appellant began shooting with both guns.

After the murder, Appellant returned to Crain's house where he called Holt at the H & H Cattle Company and told him that "the deed was done." At Crain's suggestion, Appellant later took the murder weapons to a strip pit north of Kinta and threw the guns into the water.

When Robin Dawn Jackson returned to Mooneyham's home after school, she found Shirley Mooneyham lying in blood on the kitchen floor. Mooneyham was dressed in shorts and a shirt. The house was filled with propane gas fumes, as both the left front burner and the oven of the gas stove were turned on.

On May 1, 1991, OSBI agents ran an eavesdropping operation with the help of an informant, Tim Allen. A car was fitted with a recording device and Tim Allen was "wired" with a transmitter so that his conversation with Appellant could be monitored. Allen then went to Appellant's home to pick

him up. During the drive, Appellant admitted his part in the murder of Mooneyham and described with particularity the circumstances of that murder. Appellant also stated to Allen that he was mad at Holt because he hadn't received the $100,000 he was promised for killing Mooneyham.

On May 3, 1991, Deborah Johnson, Appellant's wife, was arrested at a motel as part of a drug bust. Appellant was not involved in this case. While being interviewed, Deborah told the authorities about Crain and Holt's conversation in which they discussed the need to eliminate Shirley Mooneyham. She also informed them that while Appellant was drunk one evening, he had admitted killing Mooneyham.

Thereafter, the State filed murder charges against Appellant and Ted Holt and obtained warrants for their arrests. Appellant was arrested on May 4, 1991. He later confessed to the murder and directed officers to the strip pits where he had previously disposed of the murder weapons. One of the weapons was subsequently recovered by divers.

Other relevant facts will be addressed in the assignment of error to which they relate.

## ISSUES RELATING TO GUILT/INNOCENCE

■ During the guilt/innocence stage of trial, Agent Hogan provided testimony regarding Appellant's admissions to Tim Allen. In the punishment stage of the trial, the audio tape recording of this conversation was admitted into evidence and played for the jury. Appellant contends in his first assignment of error that this evidence was improperly admitted into evidence because the State failed to show Allen consented to the interception of his conversation with Appellant.

■ "[O]ne who voluntarily enters into a conversation with another takes the risk that such person may memorize, record or even transmit the conversation." *Cooper v. State*, 671 P.2d 1168, 1172 (Okl.Cr.1983). *See also United States v. Caceres*, 440 U.S. 741, 750–51, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733 (1979); *United States v. White*, 401 U.S. 745, 749–50, 91 S.Ct. 1122, 1124–25, 28 L.Ed.2d 453 (1971); *Arnold v. State*, 803 P.2d 1145,

1151 (Okl.Cr.1990); *Parks v. State*, 651 P.2d 686, 692 (Okl.Cr.1982). Once one party consents to the recording of the conversation, the conversation is divested of its private character. *Parks*, 651 P.2d at 692. However, if one of the parties to an intercepted conversation has not given consent, the interception is prohibited and the information obtained is inadmissible in any judicial proceeding. 13 O.S.1991, §§ 176.4(4)–(5), 176.6. *See also Arnold*, 803 P.2d at 1151.

In the instant case, the record is somewhat lacking when it comes to the issue of consent. Agent Hogan was the State's sole witness regarding the tape recorded conversation between Appellant and Allen. Unfortunately, Agent Hogan was never specifically questioned about Allen's consent to the transmission and taping of this conversation. Without question, we can easily infer from the record that Allen consented to the interception of the conversation. Allen permitted OSBI Agent Bob Almond to wire his body with a transmitter. Thereafter, Allen drove a vehicle provided to him by law enforcement to the Appellant's house. After picking Appellant up, Allen drove the prescribed route so that the agents could follow and listen to his conversation with Appellant.

The only logical conclusion is to assume that Allen consented to the eavesdropping operation; otherwise, he would not have cooperated. *See Luna v. State*, 815 P.2d 1197, 1199 (Okl.Cr.1991). Moreover, there is nothing in the record which indicates that Allen was coerced in any manner. Consequently, this proposition of error fails.

In his second assignment of error, Appellant asserts his right to a fair trial was impaired by the introduction of certain statements made by co-conspirators John Crain and Ted Holt. Appellant specifically complains the following evidence was inadmissible hearsay: (1) Deborah Johnson's testimony that she overheard Crain and Holt state that Shirley Mooneyham had to be stopped; (2) Deborah Johnson's testimony that Appellant told her Crain and Holt had asked him to kill Shirley Mooneyham; and (3) Lyla Burch's testimony that Ted Holt received a telephone call and told the caller "It's taken care of" or "It's been taken care of."

Appellant failed to object at trial to Deborah Johnson's testimony regarding Appellant's statement that Crain and Holt had asked him to kill Mooneyham. Thus, Appellant has waived all but plain error. *Mann v. State,* 749 P.2d 1151, 1158–59 (Okl.Cr.1988), *cert. denied,* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988); *Wilson v. State,* 554 P.2d 806, 809 (Okl.Cr.1976). No such error occurred here.

We further find that the remaining challenged testimony does not constitute improper hearsay. If evidence of a statement by an out-of-court declarant is offered simply to prove that the statement was made, it is not hearsay. *Woodruff v. State,* 846 P.2d 1124, 1139 (Okl.Cr.), *cert. denied,* —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Nunley v. State,* 660 P.2d 1052, 1055 (Okl. Cr.), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 179 (1983). On the other hand, if the statement is offered to prove the truth of the facts asserted it is inadmissible hearsay. *Martin v. State,* 738 P.2d 1366, 1369 (Okl.Cr. 1987). Here, the challenged testimony was offered to demonstrate that the statements were made. The statements were relevant simply because they were made. It does not matter whether the assertions were actually true. Therefore, this evidence does not constitute hearsay.

Citing *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164–165, 99 L.Ed. 101 (1954), Appellant contends in his third proposition of error that the evidence was insufficient to sustain his conviction of first degree murder because the State failed to establish the trustworthiness of his admissions by independent evidence. "A confession may be considered trustworthy if it is corroborated by substantial independent evidence." *Rogers v. State,* 890 P.2d 959, 975 (Okl.Cr.1995). *See also Fontenot v. State,* 881 P.2d 69, 80–81 (Okl.Cr.1994). However, each material element does not need to be corroborated by facts independent of the confession. In fact, there may be inconsistencies between the facts proven and the facts related in the confession, so long as the inconsistencies do not overwhelm the similarities. *Rogers,* 890 P.2d at 975; *Fontenot,* 881 P.2d at 80–81.

The State in the instant case provided sufficient corroborative evidence independent of Appellant's confession to show its trustworthiness and thus its competence. First, Appellant made two post-crime statements in addition to confessing to law enforcement. While driving with Tim Allen, Appellant discussed how and why he killed the victim.[1] Appellant also admitted to his wife after they were separated that he had committed the murder.[2]

Second, consistent with Appellant's confession, Deborah Johnson overheard Crain and Holt discussing how they wanted Shirley Mooneyham to be eliminated. When she later asked Appellant what their discussions were about, Appellant said that "they" had asked him to kill Mooneyham.

Third, Appellant stated in his confession that Crain provided him with the gun. Deborah Johnson testified that she had seen Appellant and Crain exchange guns on one occasion.

Fourth, the records at Ward's Electrical and Roustabout Service which employed Appellant at this time reflect that he did not work the day of the murder. Deborah Johnson testified that she drove him to work early that morning and returned to pick him up a couple of hours later at approximately 9:00 a.m. Thus, there are two unaccounted for hours in which Appellant's whereabouts are unknown.

Fifth, Appellant stated Mooneyham was wearing lounging clothes. Mooneyham was dressed in shorts and a shirt when her body was discovered.

Sixth, Appellant claimed he and Mooneyham smoked marijuana that morning as they talked in her kitchen. Marijuana was found at the scene on the kitchen table.

Seventh, Appellant knew Mooneyham had been shot numerous times by two different weapons.

---

1. The admissibility of this evidence is discussed in Appellant's first proposition of error.

2. The admissibility of this admission is addressed in Appellant's sixth proposition of error.

Eighth, in addition to the gun law enforcement officials later recovered from the strip-pits, Appellant stated he also used a hand gun that was laying on Mooneyham's kitchen table the morning of the murder. The testimony at trial demonstrated that Mooneyham kept a gun on the kitchen table because of her fear of Ted Holt. Of the seven bullet slugs recovered at the scene and from the victim's body, four had a Nyclad covering consistent with other ammunition found in Mooneyham's home.

Ninth, Appellant claimed he killed Mooneyham after she went to the stove to make coffee. The stove was still on when Mooneyham's body was found later that day.

Tenth, Appellant stated that he returned to Crain's house after committing the murder and later telephoned Holt at H & H Cattle to inform him that "the deed was done." Telephone records indicate that a phone call was made from Crain's residence to H & H Cattle at 11:48 a.m. on the day of the murder.

Finally, Appellant advised authorities that he had disposed of the murder weapons by throwing them into the strip-pits. Appellant later assisted law enforcement in their attempts to recover these weapons. Divers were able to retrieve one pistol from the pit and ballistic tests indicated that the non-Nyclad lead bullets found at the crime scene had been fired from that weapon.

Appellant attacks these corroborating facts by pointing to several inconsistencies between his confession and the evidence. While inconsistencies between the facts proven and the facts related in the confession exist, they do not render Appellant's confession untrustworthy and incompetent. Consequently, this proposition of error is denied.

■ Appellant asserts next that the trial court failed to properly instruct the jury that confessions must be corroborated by substantial independent evidence establishing their trustworthiness before they can be considered as evidence of guilt. In *Fontenot,* 881 P.2d at 77, this Court eliminated the corpus delicti rule and adopted exclusively the standard established in *Opper,* 348 U.S. at 93, 75 S.Ct. at 164, 99 L.Ed. 101 (1954). As a result of this switch, the Court found that the uniform instructions must be prospectively altered. *Id.* at 80 n. 15.[3]

While the jury instructions in the instant case did not meet the *Fontenot* test, this error does not require reversal. This Court has repeatedly held that where the record contains sufficient corroborating evidence, failure to give corroborating instructions does not result in reversible error. *Hammon v. State,* 898 P.2d 1287, 1308 (Okl.Cr. 1995); *Shelton v. State,* 793 P.2d 866, 876 (Okl.Cr.1990); *Maxwell v. State,* 742 P.2d 1165, 1168 (Okl.Cr.1987). As previously addressed above, there was sufficient corroborative evidence independent of Appellant's confession to show its trustworthiness. Thus, this proposition of error fails.

■ In his fifth assignment of error, Appellant contends his confession to Sheriff Hass and Agent Hogan should have been suppressed. Appellant maintains he was intoxicated and tired at the time of his arrest and subsequent questioning by authorities. Thus, Appellant submits he was incapable of knowingly and voluntarily waiving his *Miranda* rights.

■ In a suppression hearing the State bears the burden of demonstrating by a preponderance of the evidence that a confession is knowing and voluntary. *Harjo v.*

---

3. To conform to 21 O.S.1981, § 693, OUJI–CR–815 was modified as follows:

No person may be convicted of Murder in the First Degree unless both the fact of the death of the person allegedly killed and the fact that his death was caused by the conduct of another person are established as independent facts and beyond a reasonable doubt.

Moreover, OUJI–CR–814 is also to be given in all cases in which a defendant has given a properly admitted extra-judicial confession. OUJI–CR–814 states:

Should you find that the confession was made by the defendant and was made freely and voluntarily and in compliance with the rules of law set forth above, then you are instructed: a confession alone does not justify a conviction unless it is corroborated, that is, confirmed and supported by other evidence of the material and basic fact or facts necessary for the commission of the offense charged. Unless you find that the confession, if made, is corroborated, you must disregard it.

*State*, 882 P.2d 1067, 1071 (Okl.Cr.1994). The trial court's ruling will be upheld on appeal if the record as a whole supports the finding. *Id.* The testimony in the present case revealed that Appellant had been arrested in Panama, Oklahoma, at approximately 12:30 a.m. for Driving Under the Influence. Appellant was administered a breathalyzer test at 2:00 a.m. and the results indicated a .16 blood alcohol concentration. Shortly thereafter, Sheriff Hass and Agent Hogan picked Appellant up in Poteau, Oklahoma, and drove him to McAlester. During the trip, Appellant expressed a desire to talk about the case, but Hass told him to wait until they got to the office at McAlester State Penitentiary. Upon arrival, Appellant was read his *Miranda* rights. Appellant stated that he understood his rights and that he wished to talk at that time. During questioning, Appellant gave specific details of the crime. He further offered to show the officers where he had discarded the murder weapons.

Both Hass and Hogan testified that Appellant appeared to understand "what was going on" and "what was happening" during the interview. During the suppression hearing, the trial court listened to the audio tapes which were made during the interview in McAlester. The trial judge, Judge Taylor, stated that he found Appellant "to be very responsive, very specific in his answers, very coherent in his ability to follow all the questions and respond to the questions." Judge Taylor further noted that much of the interview was a narrative by Appellant and not in response to questions by the interviewers. After reviewing the audio tape of the interview and confession, we agree with Judge Taylor's conclusions. Consequently, the introduction of the confession was supported by sufficient evidence that Appellant knowingly and intelligently waived his rights and understood the consequences of his waiver. *See Harjo*, 882 P.2d at 1071–72; *Yeager v. State*, 742 P.2d 575, 577 (Okl.Cr.1987); *Richardson v. State*, 666 P.2d 1290, 1291–92 (Okl. Cr.1983).

■ Appellant additionally asserts that his confession should have been suppressed because it was the product of an illegal arrest. The affidavit supporting the warrant for Appellant's arrest relied on Appellant's statements to his wife and to Tim Allen. Appellant urges this Court to find these statements inadmissible. If these statements were admissible, he submits we must also find that the warrant for his arrest was not supported by probable cause thus rendering his confession inadmissible.

Appellant contested the admissibility of his statements to Tim Allen in his first proposition of error. This contention was rejected. Appellant challenges the admissibility of his statements to his wife in his sixth proposition of error. As will be discussed next, these statements were legally obtained and properly utilized at trial. Thus, this allegation of error fails.

■ Pursuant to 12 O.S.1991, § 2504 [4], Appellant asserts in his sixth proposition of error that the trial court erred when it permitted the State to introduce incriminating statements made by Appellant to his wife. Deborah Johnson testified regarding two separate incidents in which Appellant made incriminating statements to her. She testified first that Appellant had told her that Crain and Holt had asked him to kill Mooneyham. Deborah further testified that he later admitted to her that he had killed Mooneyham.

■ "Statements between a husband and wife are confidential if made when they are alone, or are expressly made confidential by the parties, or are induced by the marital relationship." *Watkins v. State*, 702 P.2d 1045, 1046 (Okl.Cr.1985). However, exclusion of the testimony is not required where the conversations occurred in the presence of a third party. *Id.* The same would hold true if the accused subsequently discussed the subject matter with a third person. *Id.* In the present case, Appellant discussed the same subject matter with Tim Allen. Therefore, the confidential nature of his prior dis-

---

4. Title 12 O.S.1991, § 2504(A) provides:
 A communication is confidential for purposes of this section if it is made privately by any person to his spouse and is not intended for disclosure to any other person.

cussions with his wife was lost, and exclusion of the challenged testimony was not required. This allegation of error is denied.

In his seventh assignment of error, Appellant asserts that the trial court erred when it failed to instruct on the defense of intoxication and further the lesser included offenses of second degree "depraved mind" murder and first degree manslaughter. A trial court need only instruct on a lesser included offense or a theory of defense when there is evidence in the record to support such an instruction. *Robedeaux v. State*, 866 P.2d 417, 431 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994). Under Appellant's elected defense of alibi, he either killed Mooneyham with malice aforethought or was not present at the time of her death. *See Robedeaux*, 866 P.2d at 431; *Fisher v. State*, 736 P.2d 1003, 1009 (Okl.Cr.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). Consequently, Appellant was not entitled to any instructions on lesser included offenses.

## SENTENCING STAGE ISSUES

In his ninth assignment of error, Appellant attacks the language used in Instruction No. 7 (O.R. 159). Rather than instructing the jury pursuant to OUJI–CR 439 [5], the jury was instructed as follows:

> You are instructed that mitigating circumstances are not specifically enumerated in the Statutes of this State, but the law of this State sets up certain minimum mitigating circumstances you shall follow as guidelines in determining which sentence [sic] you impose in this case. You shall consider any or all of these minimum mitigating circumstances which you find apply to the facts and circumstances of this case. You are not limited in your consideration to these minimum mitigating circumstances. You may consider any additional mitigating circumstances, if any, you find from the evidence in this case. What are

and what are not additional mitigating circumstances is for you, the jury, to determine.

> The following are some of the minimum mitigating circumstances provided by law:
> 1. the age of the defendant at the time of the crime.
> 2. the educational and training level of the defendant.
> 3. the health and medical condition of the defendant.
> 4. the defendant's family relationships.
> 5. the defendant's potential for rehabilitation.
> 6. the defendant's remorse.

(O.R. 159).

On appeal, Appellant asserts that this instruction incorrectly advised the jury that "the law" in Oklahoma has established a list of minimum mitigating circumstances. Appellant maintains this instruction inhibited the jury's freedom to decide what circumstances were mitigating by implying that some mitigators are worthy of being recognized by law, while others are not. Appellant further asserts that the problem was exacerbated because the trial court listed mitigators which were not supported by the evidence.

As Appellant failed to enter an objection to this instruction, he has waived all but plain error review. *Nealy v. State*, 636 P.2d 378, 382 (Okl.Cr.1981). While Appellant is correct in his contention that neither this Court or the legislature has developed a list of "minimum mitigating circumstances," any misstatement in Instruction 7 does not amount to plain error. It is a well established rule that jury instructions must be read as a whole and not in isolation. *Id.*

In the instant case, the jury was clearly instructed that "mitigating circumstances are not specifically enumerated in the Statutes of this State." (O.R. 159) They were further

5. OUJI–CR 439 reads as follows:
EVIDENCE HAS BEEN OFFERED AS TO THE FOLLOWING MITIGATING CIRCUMSTANCE(S): Note: List mitigating circumstance(s) supported by some evidence. WHETHER [THIS] [THESE] CIRCUMSTANCE(S) EXISTED, AND WHETHER [THIS] [THESE] CIRCUMSTANCES(S) [IS] [ARE] MITIGATING, MUST BE DECIDED BY YOU.

advised that they were not limited to the list of minimum mitigating circumstances and that they could consider any other mitigating circumstances they found from the evidence. Finally, the jury was instructed that the determination of what was mitigating circumstances was for them as jurors to resolve under the facts and circumstances of the case. (O.R. 158)

■ Reading the second stage instructions as a whole, it is clear that the jury was not misled by Instruction No. 7. However, trial courts should abstain from deviating from the language established in OUJI–CR 439. As to Appellant's contention that the trial court improperly listed certain mitigators which were not supported by the evidence, we find any error was waived by Appellant's failure to specifically object to any one of the six mitigating circumstances listed in Instruction No. 7. Consequently, this assignment of error is denied.

■ Appellant contends in his tenth proposition of error that the evidence was insufficient to support the aggravating circumstances of murder for remuneration and continuing threat to society. Appellant specifically contends the only proof of the two challenged aggravators came from his uncorroborated statements. In addressing Appellant's third assignment of error, we determined the State had presented sufficient corroborative evidence independent of Appellant's confession to demonstrate its trustworthiness and thus its competence. Each material element need not be corroborated by facts independent of the confession. *Rogers*, 890 P.2d at 974–75. Consequently, appellant's confession was sufficiently corroborated to support both the jury's finding of guilt and the challenged aggravating circumstances.

■ Moreover, the evidence presented by the State was more than sufficient to prove both of the challenged aggravating circumstances. The traditional application of the "murder for remuneration" aggravating circumstance has been where a defendant has been hired or has hired another person to perform an act of murder. *Plantz v. State*, 876 P.2d 268, 281 (Okl.Cr.1994), *cert. de-*

*nied*, —— U.S. ——, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995). In the present case, Appellant advised both the informant, Tim Allen, and law enforcement officials that he was hired by Holt and Crain to commit the murder. This was not a crime of passion, nor was the murder committed as an afterthought while Appellant was in the course of committing another felony offense, such as robbery or burglary. *See Plantz*, 876 P.2d at 281. Rather, the evidence demonstrated that the crime was motivated by financial gain.

■ The evidence was likewise sufficient to support the continuing threat to society aggravating circumstance. In order to support this aggravating circumstance, the State must demonstrate a defendant will continue to present a threat to society after sentencing. *Malone v. State*, 876 P.2d 707, 717 (Okl.Cr.1994). A defendant's criminal history, the callousness of the crime, threats against others, lack of remorse, and attempts to prevent calls to the police are all factors this Court has previously considered when addressing this issue. *Medlock v. State*, 887 P.2d 1333, 1349 (Okl.Cr.1994).

In the instant case, Appellant stipulated that he pled guilty to the offense of First Degree Manslaughter in Oklahoma County in 1979. The evidence in this case further demonstrated he committed the offense of arson on the victim's house just 10 days before the murder. During his confession, Appellant stated that Holt and Crain had hired him to burn the victim's house to destroy certain evidence she was holding against them. Moreover, while speaking with Tim Allen, Appellant discussed how he intended to kill Ted Holt because of his failure to pay the promised $100,000 for Shirley Mooneyham's murder. Appellant further bragged about the crime and how he committed it. This evidence clearly demonstrated Appellant's lack of remorse and the callousness of the murder. Consequently, this allegation of error is denied.

■ In his eleventh assignment of error, Appellant contends Oklahoma's "continuing threat to society" aggravating circumstance is unconstitutionally vague and overly broad on its face. Although he recognizes that this

Court has repeatedly rejected this contention, Appellant urges this Court to reconsider its position that this aggravating circumstance is "specific, not vague, and is readily understandable without further definition." *Boyd v. State*, 839 P.2d 1363, 1371 (Okl.Cr. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993). This issue has been repeatedly addressed and rejected. *Walker v. State*, 887 P.2d 301, 320 (Okl.Cr. 1994); *Revilla v. State*, 877 P.2d 1143, 1156 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995). We are not now persuaded to alter our prior position. Accordingly, this proposition of error fails.

■ Appellant claims in his twelfth proposition of error that the trial court erred in failing to instruct the jury that they could impose a life sentence even if they found aggravating circumstances exist. This contention has been consistently rejected by this Court. *Robedeaux*, 866 P.2d at 435; *Pickens v. State*, 850 P.2d 328, 339 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). We do so again.

■ Appellant asserts next that the jury was permitted to ignore mitigating evidence. The jury was instructed in the permissive language that mitigating circumstances are those which "may be considered" as extenuating or reducing the degree of blame. (O.R. 158) Appellant contends the instruction should have read that a mitigating circumstance, once determined to exist, "must be considered." This Court has repeatedly rejected this contention. *Walker*, 887 P.2d at 322; *Bryson v. State*, 876 P.2d 240, 262 (Okl. Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Pickens*, 850 P.2d at 339. Appellant has not provided this Court with any new basis upon which to invalidate these instructions. Thus, this proposition of error is denied.

In his fourteenth proposition of error, Appellant asserts the trial court's instructions regarding the manner in which the jury was to weigh aggravating and mitigating circumstances set forth an improper burden of proof. This same allegation of error has been repeatedly rejected by this Court. *Paxton*, 867 P.2d at 1327; *Trice v. State*, 853

P.2d 203, 216 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993); *Romano v. State*, 847 P.2d 368, 392 (Okl.Cr.1993), *affirmed* 512 U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). We do so again.

Appellant contends in his fifteenth proposition of error that the jury instructions improperly failed to inform the jury that their finding of mitigating circumstances did not have to be unanimous. We have previously addressed and rejected this contention. *Stiles v. State*, 829 P.2d 984, 997 (Okl.Cr. 1992). We need not address it again here.

## PROSECUTORIAL MISCONDUCT

■ In his eighth proposition of error, Appellant raises several specific allegations of prosecutorial misconduct allegedly committed during both the guilt/innocence and punishment phases of trial. The majority of these now challenged comments were never timely objected to at trial. Thus, as to these comments, appellant has waived all but plain error. *Hunt v. State*, 793 P.2d 1366, 1368 (Okl.Cr.1990); *Quilliams v. State*, 779 P.2d 990, 992 (Okl.Cr.1989); *Harris v. State*, 777 P.2d 1359, 1362 (Okl.Cr.1989). No such error occurred here.

■ As to the remainder of his allegation, Appellant first contends the State exaggerated the facts and indulged in rank speculation when, during cross-examination of Appellant, he asked Appellant "So it's by chance, then, Mr. Johnson, that you've got her drawn on your diagram exactly the way she was found in the kitchen?" To which Appellant responded that it was by chance. Appellant contends the drawing shows nothing about the actual position of the body, which in fact was resting on its left side. He further submits the location of the body in the drawing is completely wrong. Appellant asserts the State's comments improperly conveyed to the jury that Appellant's drawing manifested exact knowledge as to the location and position of the body.

Defense counsel objected and asserted that the drawing was not accurate. Upon overruling the objection, the trial court stated in

open court "The jury will see the diagram and they will judge this fact." There was nothing improper about this challenged question. Appellant presented an alibi defense. Appellant's ability to draw the crime scene when he testified he had never been there is certainly a relevant area for inquiry. Moreover, the trial court properly found the accuracy of Appellant's drawing to be within the jury's province. If a minor misstatement of the facts occurred, it was certainly not made intentional nor made in an attempt to mislead the jury. Nor was any such error outcome determinative. *See Crawford v. State,* 840 P.2d 627, 641 (Okl.Cr.1992); *Cunningham v. State,* 748 P.2d 520, 522 (Okl.Cr.1987).

■ Appellant next attacks the prosecutor's comments during closing arguments regarding how Appellant knew hollow point bullets were used in the commission of the murder. The prosecutor speculated that there must have been unexpended shells left in the unrecovered gun. Based upon this premise, he asserted that Appellant must have emptied the hollow point shells from the unrecovered gun before he threw it away. The challenged comments were met by objection, and the trial court responded as follows:

> The jury will recall the evidence. And I would remind the jury that closing argument is the attorney's opportunity to interpret the evidence as he sees it, but it is not evidence. Go ahead.

While the State's comments may have been overreaching, such error was harmless in light of the substantial evidence involved in this case and the proper admonition by the court.

■ Finally, Appellant asserts the prosecutor improperly stated that seven teachers had marked Appellant's alibi witness, sixteen-year-old Calonica Walker, present at school on the day of the murder. If Walker was at school, she could not have seen Appellant at her grandmother's house the morning of the murder. The State called S.A. Hall, the school superintendent, who sponsored records which indicated Walker had not been absent from school. However, on cross-examination Hall conceded that the records

would be in error if the tardy slips from the teachers were not prepared or collected.

In light of this evidence, Appellant contends the prosecutor's comment during closing argument that seven teachers had marked Walker present at school was merely speculation. While the prosecutor's statement was not technically correct, it was clearly not a flagrant misstatement of the evidence. Moreover, the prosecutor's statement was clearly not verdict determinative. It is certainly reasonable to assume that at least one of Walker's teachers would have reported her absent if she had not attended school that day.

Having reviewed all these comments, both individually and as a whole, we do not find grounds for either reversal or modification. This proposition of error is denied.

## CUMULATIVE ERROR REVIEW

In his final proposition of error, Appellant asks this Court to consider the cumulative effect of the alleged errors and grant relief even if the individual errors do not, in themselves, justify such action. As no error occurred which would require reversal or modification of this case, this proposition of error is denied. *Shelton,* 793 P.2d at 877.

## MANDATORY SENTENCE REVIEW

■ In accordance with 21 O.S.Supp. 1985, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances.

Upon review of the record, we cannot say Appellant's sentence of death was imposed because the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to Section 701.13(C).

The evidence further supports the jury's finding of three aggravating circumstances. The jury found the existence of the following aggravating circumstances: (1) Appellant had previously been convicted of felonies involving the use or threat of violence to the person; (2) Appellant committed the murder

for remuneration or the promise of remuneration; and (3) Appellant posed a continuing threat to society. After carefully reviewing the record, we find the sentence of death to be factually substantiated and appropriate.

Therefore, finding no error warranting reversal or modification, the Judgment and Sentence of the District Court of Pittsburg County is **AFFIRMED.**

CHAPEL, V.P.J. and LANE and STRUBHAR, JJ., concur.

LUMPKIN, J., concurs in result.

### ORDER GRANTING REHEARING TO CORRECT OMISSION AND DIRECTING ISSUANCE OF MANDATE

Petitioner filed a Petition for Rehearing in the above styled case after his conviction for First Degree Malice Aforethought Murder and sentence of death was affirmed by this Court on October 23, 1995. *Johnson v. State,* 911 P.2d 918 (Okl.Cr.1995). Petitioner raises four allegations of error in his petition. A petition for rehearing may only be filed if 1) some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or 2) the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument. Rule 3.14(B), *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1994, Ch. 18, App. We grant rehearing solely to correct an omission in this Court's opinion. The remainder of Petitioner's allegations of error are not appropriate for rehearing.[1]

 Petitioner correctly claims in his Petition for Rehearing that this Court failed to make a specific finding regarding his con-

tention that the admission of certain out-of-court statements made by co-defendants Crain and Holt violated his Sixth Amendment right of confrontation.[2] An accused's right to confront the witnesses against him is violated when the out-of-court admissions of non-testifying co-defendants which implicate the defendant are introduced at trial. *See Cruz v. New York,* 481 U.S. 186, 190–191, 107 S.Ct. 1714, 1717–18, 95 L.Ed.2d 162 (1987); *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968). However, we find the challenged testimony in the instant case is not the type prohibited in *Bruton.*

The challenged testimony consisted of the following: (1) Deborah Johnson's testimony that she overheard Crain and Holt state that Shirley Mooneyham had to be stopped; (2) Deborah Johnson's testimony that Appellant told her Crain and Holt had asked him to kill Shirley Mooneyham; and (3) Lyla Burch's testimony that Ted Holt received a telephone call and told the unknown caller "It's taken care of" or "It's been taken care of." The only challenged statement which directly links Petitioner to the murder was Petitioner's own statement to Deborah Johnson that he had been asked to kill Mooneyham. This was not an out-of-court statement by a non-testifying co-defendant, but Petitioner's own statement. *See* 12 O.S.1991, § 2801(4)(b)(1). The remaining challenged statements 12 O.S. 1991, § 2801(4)(b)(1). The remaining challenged statements are only incriminating when combined with the other evidence introduced at trial. Thus, this testimony is not the type prohibited in *Bruton* as it does not make co-defendants Crain and Holt witnesses against Petitioner. *See Carter v. State,* 879 P.2d 1234, 1246 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995); *Bryson v. State,* 876

---

**1.** Under sub-section "B" of his Petition for Rehearing, Petitioner contends, in part, that the Court's decisions regarding the "continuing threat" aggravating circumstance in Propositions X(B) and XI are in conflict with *Williamson v. Reynolds,* 904 F.Supp. 1529 (E.D.Okla.1995). While we are fully aware of the *Williamson* decision, this decision is not a "controlling decision." *See Roberts v. State,* 910 P.2d 1071, 1083 n.7 (Okl.Cr.1996).

**2.** In his second assignment of error on appeal, Petitioner submitted the introduction of Crain's and Holt's out-of-court statements violated state law prohibitions against the introduction of hearsay evidence, and that the admission of these statements violated his Sixth Amendment right of confrontation. We found the challenged testimony did not constitute improper hearsay.

P.2d 240, 253 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Fowler v. State,* 779 P.2d 580, 586 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990). Consequently, no relief is warranted.

**IT IS THEREFORE THE ORDER OF THIS COURT** that this Petition for Rehearing be **GRANTED** with no relief required and the court clerk should issue the mandate.

**IT IS SO ORDERED.**