**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VINCENT ALLEN JOHNSON,

        Petitioner-Appellant,

v.

GARY L. GIBSON, Warden,
Oklahoma State Penitentiary; DREW
EDMONDSON, Attorney General of
the State of Oklahoma,

        Respondents-Appellees.

No. 99-7089
(D.C. No. CIV-98-072-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

Petitioner appeals the district court's denial of habeas relief, *see* 28 U.S.C.

§ 2254, from his Oklahoma first degree malice murder conviction and death

sentence. Petitioner was convicted of the shooting death of Shirley Mooneyham.

The evidence at trial indicated the victim's estranged husband, Ted Holt, and

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

petitioner's employer, John Crain, hired petitioner to kill the victim. On different occasions, petitioner admitted to an undercover police informant, police and his wife that he had committed the murder. At sentencing, the jury found the three charged aggravating factors--petitioner 1) committed the murder for remuneration; 2) had suffered a prior violent felony conviction; and 3) presents a continuing threat to society.

The Oklahoma Court of Criminal Appeals affirmed petitioner's conviction and death sentence, and denied post-conviction relief. *See Johnson v. State*, 911 P.2d 918 (Okla. Crim. App. 1995), *cert. denied*, 519 U.S. 839 (1996); *Johnson v. State*, 952 P.2d 1003 (Okla. Crim. App. 1998).

## I.     STANDARDS OF REVIEW

Because petitioner filed his habeas petition after its effective date, the Antiterrorism and Effective Death Penalty Act applies. *See Williams v. Taylor*, 120 S. Ct. 1479, 1486 (2000). Petitioner, therefore, will not be entitled to habeas relief unless the state court's adjudication of the merits of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000).

If the state court did not address the merits of a claim, and "the federal district court made its own determination in the first instance," then this court reviews "the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error." *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999).

Petitioner received a certificate of appealability on the following issues. *See* 28 U.S.C. § 2253(c).

## II. LACK OF INFORMANT'S CONSENT TO GOVERNMENT INTERCEPTION OF PETITIONER'S ADMISSIONS TO HIM

Petitioner admitted to an acquaintance, Tim Allen, that petitioner had killed the victim. Allen was cooperating with police. Police had given Allen a sports car to use, equipped with a tape recorder, and "wired" him with a concealed radio transmitter. Allen then took petitioner for a ride in the car. During their conversation, petitioner made numerous inculpatory statements, which police intercepted and recorded.

Clearly established Supreme Court precedent provides that law enforcement's eavesdropping or electronically monitoring conversations, with the consent of one of the conversants, does not violate the Fourth Amendment. *See United States v. Caceres*, 440 U.S. 741, 744, 750 (1979); *see also United States v. White*, 401 U.S. 745, 751 (1971) (plurality). Petitioner argues, however, that Allen did not voluntarily consent to the interception of this conversation.

Allen failed to appear at trial in August 1991, although he had been served with a subpoena the preceding week. The trial court, in Allen's absence, found that he had consented to the interception of this conversation, in light of the fact that he had permitted officers to "wire" him with a radio transmitter and had given him the sports car to use. The state court's determination that Allen voluntarily consented is a finding of fact, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973), to which this court must defer, absent petitioner's assertion of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1).

Petitioner challenges the trial court's finding of consent with a signed statement from Allen, dated August 1998, in which Allen asserts that police coerced his cooperation by threatening Allen and his family. Petitioner asserted this evidence for the first time in these § 2254 proceedings and sought an evidentiary hearing on the issue of consent.

The district court properly determined that, under 28 U.S.C. § 2254(e)(2), it could not conduct an evidentiary hearing. In relevant part, § 2254(e)(2) provides that, where a petitioner has failed to develop the factual basis of his federal habeas claim in state court, the federal habeas court "shall not" conduct an evidentiary hearing unless the petitioner shows that the factual predicate could not have been discovered previously, through the exercise of due diligence, and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

Petitioner will not be deemed to have "fail[ed] to develop the factual basis" of this claim "unless there is lack of diligence or some greater fault, attributable to" him. *Williams*, 120 S. Ct. at 1488. "Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." *Id.* at 1490.

Petitioner alleges only that his investigator did not start looking for Allen until appointed counsel began preparing for the federal habeas proceeding, seven years after his trial, and that only through skill and luck did the investigator find Allen after a four-month search. These allegations are insufficient to show petitioner's due diligence in seeking to develop the factual basis of this claim in

-5-

state court. *See Smallwood v. Gibson*, 191 F.3d 1257, 1266 (10th Cir. 1999), *petition for cert. filed* (U.S. Mar. 9, 2000) (No. 99-9445).

Petitioner argues that his efforts to develop this claim in state court were diligent, albeit unsuccessful, because the State withheld evidence of its coercion of Allen. *See Williams*, 120 S. Ct. at 1488 (petitioner is not at fault when his diligent efforts are thwarted by another's conduct); *see also id.* at 1489. This conclusory allegation, however, is insufficient to explain petitioner's failure to look for Allen at the time of trial or for almost seven years following trial. Petitioner argued at trial and on direct appeal that Allen had not consented to the interception of his conversation with petitioner. Petitioner, thus, was aware of the disputed consent issue throughout his state court proceedings. *See id.* at 1490 (diligence is based on available information). He fails to assert, however, any efforts he undertook during those state proceedings to develop the factual basis of that claim. *See id.* at 1491-92.

Because petitioner failed to develop the factual basis of this § 2254 claim, he must establish both that any efforts to discover the facts would have been in vain and that he has a "convincing claim of innocence." *Williams*, 120 S. Ct. at 1490 (citing 28 U.S.C. § 2254(e)(2)(A)(ii) and (B)); *see also id.* at 1491. This he has not done. The district court, therefore, properly denied petitioner an evidentiary hearing on the issue of consent.

### III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner argues that his trial attorney provided constitutionally ineffective representation by failing to obtain the testimony of his co-defendant, Ted Holt, and by failing to investigate and present mitigating evidence. Petitioner did not assert these claims until his state post-conviction proceeding. The Oklahoma Court of Criminal Appeals held that petitioner had thus procedurally defaulted these ineffective assistance claims, because the facts upon which they were based were available at the time of his direct appeal. *See Johnson*, 952 P.2d at 1006. Because petitioner was represented at trial and on appeal by different attorneys, the adequacy of this state procedural bar to preclude federal habeas review turns on whether he could have adequately developed the factual bases of these claims on direct appeal. *See English v. Cody*, 146 F.3d 1257, 1263 (10th Cir. 1998).

#### A. *Failure to obtain co-defendant Holt's testimony*

At Holt's trial, occurring after petitioner's conviction, Holt testified that he had been friends with Crain for ten years. He had met, but did not really know, petitioner. Holt denied hiring petitioner to kill his wife. The jury acquitted Holt. Petitioner asserts that his trial attorney should have sought immunity for Holt, so that he could have given this same testimony at petitioner's trial.

Petitioner's direct appeal attorney had the information necessary to raise this claim on direct appeal, because the state trial court had ordered the court

reporter to give petitioner's attorney the audiotapes of Holt's trial. The state's procedural bar, therefore, is adequate to preclude federal habeas review.

As cause excusing this default, petitioner asserts his appellate counsel was ineffective in failing to raise this claim on direct appeal. *See generally Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (discussing cause and prejudice excusing procedural default). The relevant inquiry is whether appellate counsel omitted a claim that was "clearly meritorious." *Johnson v. Gibson*, 169 F.3d 1239, 1251 (10th Cir.) (further quotation omitted), *cert. denied*, 120 S. Ct. 415 (1999). In order for his ineffective assistance of trial counsel claim to have clear merit, petitioner must establish both that trial counsel's performance was deficient and that petitioner was thereby prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). He alleges prejudice in both the first and second stages of his trial.

The district court held that, even if Holt had testified at petitioner's trial as he testified at his own, the jury would not have acquitted petitioner, in light of petitioner's confessions and the evidence corroborating the details of those confessions. We agree and affirm on that basis. For similar reasons, there is not a reasonable probability that, had they heard Holt's testimony, jurors in petitioner's case would have concluded the balance of aggravating and mitigating evidence did not warrant death. *See id.* at 695. Petitioner's ineffective assistance

of trial counsel claim is, thus, not clearly meritorious and he is, therefore, unable to establish the cause and prejudice necessary to excuse this default.

### B. Failure to prepare adequately for sentencing

Petitioner asserts that trial counsel provided constitutionally ineffective representation during the sentencing stage of his trial by failing to investigate and present mitigating evidence. The state appellate court deemed petitioner to have defaulted this claim, raised for the first time in his state post-conviction pleadings, because trial counsel's ineffective representation at sentencing was "obvious" from the direct appeal record. *See Johnson*, 952 P.2d at 1007. In order to resolve the prejudice component of this ineffective assistance claim, it still would have been necessary for the reviewing court to go beyond the trial record to consider evidence petitioner alleges trial counsel should have presented, *see generally Williams*, 120 S. Ct. at 1515, and we are not persuaded that Oklahoma's procedural bar is adequate to preclude habeas review of this claim. *See Pickens v. Gibson*, 206 F.3d 998, 1001 (10th Cir. 2000); *English*, 146 F.3d at 1264.

Where counsel's alleged errors occurred during a capital sentencing proceeding, the prejudice inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695; *see also Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998)

(requiring reviewing court to consider strength of government's case and aggravating circumstances jury found to exist, as well as mitigating factors that might have been presented), *cert. denied*, 120 S. Ct. 94 (1999). The district court held that the additional mitigating evidence petitioner now asserts was either cumulative or insufficient to persuade the jury not to impose a death sentence, in light of the aggravating and mitigating evidence that was presented at sentencing. We agree that petitioner has failed to establish the requisite prejudice.

At sentencing, in support of its charged aggravators, the State incorporated the first stage evidence; the parties stipulated to petitioner's prior manslaughter conviction; the State presented a detective's testimony that petitioner had, prior to the killing, set the victim's house on fire at the request of Crain and Holt; and played portions of the tape recorded conversation between petitioner and informant Allen, during which petitioner bragged about the killing and threatened to kill Holt and harass Crain because they had failed to pay petitioner for the murder.

In mitigation, petitioner testified that he had completed two years of college; served four years in the Marine Corps, receiving an honorable discharge; had worked in oil fields and machine shops and trained horses; maintained his innocence of the murder, but expressed his condolences to the victim's family for his part in hiding the murder weapons; and begged for his life and the opportunity

to know his children growing up. Two of his sisters testified that petitioner was a good brother, helpful and good with children, hardworking and dependable. They asked the jury to spare his life because his family and his children needed him. Petitioner's mother testified that petitioner was a good son, nice and helpful, and she did not want him to die.

In support of his application for post-conviction relief, petitioner presented affidavits of these witnesses, and other friends and relatives who would have further testified that petitioner was a good friend, popular in high school, a good athlete, a church member, nonviolent, morally good, talented, smart, hardworking, and fond of horses and cars. They could also have testified that petitioner was subject to physical abuse as the first black student to attend integrated schools in that area, and that his fiancé had died in a car wreck the day before their wedding. One individual suspected petitioner's stepfather abused him.

A psychologist, Vesta Gettys, Ph.D., evaluated petitioner for purposes of his state post-conviction proceedings. After administering several tests, Dr. Gettys concluded petitioner's results were normal, he had a strong need to present himself in the best light, he approached things passively, he had very low self-esteem and it was unlikely he would present much of a behavior problem.

In his § 2254 pleadings, petitioner sought to expand the federal habeas record to include the affidavit of Manuel St. Martin, M.D., a psychiatrist and

attorney. *See* Rule 7, Rules Governing Section 2254 Cases. Dr. St. Martin indicated that petitioner's background included a number of "markers" that should have indicated to trial counsel that a neuropsychological exam was necessary. Those markers included head injuries suffered while breaking horses, bull riding, and boxing; petitioner's alcoholism; his prior heroin addiction; his impoverished upbringing; the absence of his alcoholic and abusive father; his school attendance during integration of area schools; and his leaving home and becoming the family breadwinner at age twelve.

Dr. St. Martin acknowledged his evaluation was consistent with that of Dr. Gettys. In addition, Dr. St. Martin indicated that petitioner's stoic or cavalier attitude was really a coping mechanism which may have created a false impression with the jury that he lacked remorse; petitioner would adapt well to structured prison life; and his use of alcohol would have made it more likely that he would tell a false story under police interrogation. The district court declined to consider this affidavit, holding it was not sufficiently relevant to warrant expanding the record.

Even considering Dr. St. Martin's affidavit, this additional mitigating evidence was not sufficient to warrant habeas relief. *See, e.g.*, *Clayton v. Gibson*, 199 F.3d 1162, 1178-79 (10th Cir. 1999), *petition for cert. filed* (U.S. May 20,

2000) (No. 99-9630); *Smith v. Gibson*, 197 F.3d 454, 463-64 (10th Cir. 1999), *petition for cert. filed* (U.S. May 19, 2000) (No. 99-9652).

Petitioner's case is distinguishable from the Supreme Court's decision in *Williams*, 120 S. Ct. 1495. In that case, the Court held Williams was prejudiced by defense counsel's deficient investigation, which failed to disclose "extensive records graphically describing Williams' nightmarish childhood," including his parents' criminal neglect of Williams and his siblings and Williams' severe and repeated beatings by his father. *Id.* at 1514-15. Trial counsel also failed to discover that Williams was borderline mentally retarded, completing only the sixth grade; had received prison commendations for helping to break up a prison drug ring and returning a guard's wallet; prison officials considered him to be one of the inmates least likely to act violently; and a member of a prison ministry would have testified petitioner thrived in the structured prison environment. *See id.* at 1514. The additional mitigating evidence petitioner has presented in this case fails to rise to the same level of significance as that found in *Williams*.

Nor is this case like that of *Mayes v. Gibson*, 210 F.3d 1284, 1290-91 (10th Cir. 2000), in which this court held that trial counsel's failure to present additional mitigating evidence had prejudiced the petitioner. Unlike this case, in *Mayes*, the State's case supporting the capital murder conviction was relatively

weak, the jury "obvious[ly] struggle[d] in deliberations," and found the existence of only one aggravating circumstance. *Id.* at 1291.


## IV.   *HEARSAY TESTIMONY*

Petitioner asserts that the trial court erred in admitting hearsay testimony from petitioner's wife and the wife of Holt's work supervisor, concerning statements made by petitioner's co-defendants. Petitioner's wife testified that petitioner had told her that Crain and Holt had asked him to kill the victim and that he had in fact killed her. As the state appellate court noted, this testimony concerned petitioner's statements, not those of his co-defendants, as he complains. *See Johnson*, 911 P.2d at 932.

Petitioner's wife further testified concerning a conversation she overheard, during which Holt and Crain indicated that the victim had to be stopped, was not going to get away with what she was doing, and had to be "eliminated." In addition, Lyla Burch, the wife of Holt's work supervisor, testified that, during a telephone conversation occurring around noon on the day of the murder, Holt stated either "it's been taken care of" or "it's being taken care of."

Petitioner first asserts that this testimony violated his Sixth Amendment right to confront witnesses. The trial court admitted this testimony after determining it was not hearsay because the State had not offered these statements

to prove their truth. *See Tennessee v. Street*, 471 U.S. 409, 411-13, 413-14 (1985) (where prosecutor did not introduce testimony of co-defendant's confession implicating defendant to prove truth of confession, but rather to rebut defendant's testimony that his own confession was coerced, nonhearsay aspect of co-defendant's confession did not raise any Confrontation Clause concerns); *see also Hopkinson v. Shillinger*, 866 F.2d 1185, 1203 (10th Cir.), *reh'g en banc*, 888 F.2d 1286 (10th Cir. 1989), *overruling of en banc decision on other grounds recognized by Davis v. Maynard*, 911 F.2d 415, 417 (10th Cir. 1990). That determination was not unreasonable.

Even if admission of this testimony violated the Confrontation Clause, however, any error would have been harmless, at either stage of trial, in light of petitioner's inculpatory statements to the government informant and to police. *See, e.g.*, *United States v. Gomez*, 191 F.3d 1214, 1223 (10th Cir. 1999) (Confrontation Clause violations are subject to harmless error analysis).

In addition to his more general Confrontation Clause argument, petitioner also argues that this hearsay violated *Bruton v. United States*, 391 U.S. 123 (1968). *Bruton*, however, does not specifically apply to this case because petitioner was not jointly tried with his co-defendants. *See generally Lilly v. Virginia*, 527 U.S. 116, 127-29 (1999) (plurality) (discussing *Bruton* line of cases).

Finally, petitioner argues that he had a state law right not to be convicted on the basis of testimony violating Oklahoma's rule against hearsay. State law evidentiary errors alone, however, will not warrant federal habeas relief. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Further, the admission of this testimony did not result in a fundamentally unfair trial, which would violate due process. *See id.* at 70.

## V. *PETITIONER'S INCULPATORY STATEMENTS*

Petitioner argues that the trial court should have suppressed his inculpatory statements. He also asserts that independent evidence did not sufficiently corroborate those statements, as required by Oklahoma law.

We have already held that the trial court's admission of petitioner's statements made to informant Allen was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

### A. *Post-arrest statements*

Petitioner contends that he was unlawfully arrested on a warrant based upon his impermissibly obtained statements to informant Allen and petitioner's wife. The state appellate court rejected this claim, determining petitioner's statements

to both Allen and petitioner's wife were properly obtained. *See Johnson*, 911 P.2d at 927. That determination was reasonable.

Petitioner further asserts that his waiver of his *Miranda* rights and his statement made to police following his drunk driving arrest were not knowing and voluntary because he was intoxicated. In determining whether petitioner's statements are knowing and intelligent, clearly established Supreme Court precedent requires consideration of whether petitioner appreciated the consequences of his actions. *See, e.g., Patterson v. Illinois*, 487 U.S. 285, 296-97 (1988); *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The voluntariness inquiry turns on whether the confession was the product of a free and deliberate choice rather than intimidation, coercion or deception, *see Moran*, 475 U.S. at 421, and focuses on police overreaching, *see Colorado v. Connelly*, 479 U.S. 157, 170 (1986). Both of these inquiries are based upon the totality of the circumstances. *See Moran*, 475 U.S. at 421. Having carefully reviewed the record, we conclude the state courts' determination that petitioner's confession to police was knowing, intelligent and voluntary was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

### B. *Petitioner's inculpatory statements to his wife*

Petitioner challenges his wife's testimony that, on one occasion, he told her Holt and Crain had asked him to kill the victim and, after the murder, petitioner

told her that he had in fact killed the victim. Oklahoma law does provide that "[a]n accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse." Okla. Stat. tit. 12, § 2504(B). Relying on Oklahoma authority, the trial court held petitioner had waived this privilege because he had also made similar statements to informant Allen. *See also Johnson*, 911 P.2d at 927-28 (affirming trial court's determination on direct appeal).

Although federal and state courts have adopted marital communication privileges, it is apparent that this claim resting upon state law cannot meet the requirements of 28 U.S.C. § 2254(d)(1).

### C. *Independent corroboration of petitioner's confessions*

Petitioner contends the trial court did not properly instruct the jury concerning the need for independent evidence corroborating petitioner's inculpatory statements. Oklahoma has adopted the rule in federal criminal cases requiring substantial independent evidence of the trustworthiness of a defendant's confession. *See Fontenot v. State*, 881 P.2d 69, 77-78 (Okla. Crim. App. 1994) (citing *Opper v. United States*, 348 U.S. 84 (1954)). The Oklahoma Court of Criminal Appeals held, in this case, that the trial court had improperly instructed the jury on the need for independent corroboration, but that error did not warrant reversal because there was sufficient independent evidence in the record to

corroborate petitioner's inculpatory statements under the proper standard. *See*

*Johnson*, 911 P.2d at 925-26.

Although Oklahoma law relies on authority from federal criminal cases,

petitioner fails to cite any clearly established Supreme Court authority holding

that the need for independent corroboration of a defendant's confession is

constitutionally required. *Cf. Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir.

1999) (despite Oklahoma law requiring corroboration of accomplice's testimony,

there was no such constitutional requirement to support federal habeas claim),

*cert. denied*, 120 S. Ct. 1438 (2000). State law errors are not sufficient to warrant

federal habeas relief, and the admission of this evidence did not result in a

fundamentally unfair trial. *See, e.g., Estelle*, 502 U.S. at 67-68, 70; *cf. Foster*,

182 F.3d at 1193-94.


## VI. FAILURE TO INSTRUCT FURTHER ON LIFE IMPRISONMENT WITHOUT PAROLE

Relying on *Simmons v. South Carolina*, 512 U.S. 154 (1994) (plurality),

petitioner argues that instructing the jury on its three sentencing options--death,

life imprisonment and life without parole--was insufficient to convey to the jury

that a sentence of life without parole would insure that petitioner would remain in

prison the rest of his natural life. This court has previously rejected this

argument. *See Mayes*, 210 F.3d at 1294.

*VII.  CONCLUSION*

After careful review of the record and consideration of the parties' arguments, we AFFIRM the district court's denial of habeas relief.

Although the court declined to issue a certificate of appealability on the following two issues, Mr. Johnson was allowed to state them at the end of his brief.  We reaffirm the denial of a certificate of appealability on the issue that the "continuing threat" aggravating circumstance is unconstitutionally vague and overbroad.  We have repeatedly rejected that proposition.    *See James v. Gibson*, 211 F.3d 543, 559 n.8 (10th Cir. 2000).  We likewise reaffirm the denial of a certificate of appealability on the issue that the jury was not adequately instructed on the sentencing scheme because it was not informed it had the option to return a life sentence even if it found aggravation outweighed mitigation.  This, too, has been rejected.   *See LaFevers*, 182 F.3d at 717-18.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge